HILLSIDE COMMUNITY HOSPITAL OF
UKIAH, a non-profit corporation,
Plaintiff,

v.

David MATHEWS, Secretary of Health,
Education, and Welfare, et al.,
Defendants.

No. C–72–2112 AJZ.

United States District Court,
N. D. California.

Nov. 9, 1976.

James L. Browning, Jr., U. S. Atty., George Christopher Stoll, Asst. U. S. Atty., San Francisco, Cal., Ross E. Campbell, Dept. of HEW, Baltimore, Md., for defendants.

Weissburg & Aronson, Robert A. Klein, Los Angeles, Cal., Merle P. Orchard, Ukiah, Cal., for plaintiff.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ZIRPOLI, District Judge.

Plaintiff challenges the determination by the Secretary of Health, Education, and Welfare (hereinafter the "Secretary") that certain expenditures were not reimbursable under the federally funded health care program popularly known as "Medicare" and established pursuant to the Medicare Act. 42 U.S.C. § 1395 et seq.[1] To be determined by this action is the question whether plaintiff, Hillside Community Hospital of Ukiah (hereinafter "Hillside Nonprofit"), is entitled to reimbursement under the Medicare Act and its implementing regulations, particularly those found at 20 C.F.R. sections 405.415, 405.419, and 405.427, for depreciation and interest expenses incurred in connection with the purchase of a hospital building and land from a joint venture known as Hillside Associates.

*Facts*

Plaintiff is a nonprofit corporation that qualifies as a "provider" of Medicare services within the meaning of the applicable provision of the Medicare Act. 42 U.S.C. § 1395x. Defendants are the Secretary of Health, Education, and Welfare, Blue Cross Association, and Blue Cross Hospital Service of California (hereinafter "Hospital Service"). Blue Cross Association and Hospital Service are the "fiscal intermediary" between Hillside Nonprofit and the Secretary.[2] Their function is to determine whether Hillside Nonprofit is entitled to reimbursement for its costs in providing services under the Medicare Act. Only upon certification by the fiscal intermediary does Hillside Nonprofit become entitled to funds for costs incurred in connection with the Medicare program.

On March 1, 1967, Hillside Nonprofit purchased a hospital building and the land on which it was situated from Hillside Associates for a total price of $694,373.15. The payment of the purchase price was secured in part by the issuance of notes by Hillside Nonprofit in favor of Hillside Associates at an interest rate of seven percent. Concurrent with its acquisition of the hospital building and land from Hillside Associates, Hillside Nonprofit acquired the assets of the hospital from Hillside Community Hospital (hereinafter "Hillside Profit"), the California corporation then operating the hospital. The only consideration for this purchase was the assumption by Hillside

---

1. The basic purpose of the Medicare Act is to provide adequate medical services to aged citizens, many of whom live on fixed incomes and therefore cannot afford the increasingly high cost of adequate hospital care. See 111 Cong. Rec. 7351–7444 (1965). The language of the Act reveals a congressional intent that the medical services be applied efficiently and economically. *See, e. g.,* 42 U.S.C. § 1395x(v) (providers to be reimbursed for "reasonable costs"); 42 U.S.C. § 1395i (program to be financed through tax schedules and creation of a trust fund from which benefits to be paid). This congressional intent is also reflected in the implementing regulations—such as those that are the focus of the instant action, which are designed to insure that loans to providers are

legitimate and that depreciation expenses and interest rates are reasonable. 20 C.F.R. §§ 405.415, 405.419, 405.427.

2. Blue Cross Association is a non-profit corporation organized under Illinois law. It was designated by Hillside Nonprofit as its fiscal intermediary. Under the Medicare Act, fiscal intermediaries are charged with performing certain administrative functions for the Secretary relating to the determination of cost reimbursements due providers of services under 42 U.S.C. section 1395h. Blue Cross delegated its duties as a fiscal intermediary for Hillside Nonprofit to Hospital Service, and through Hospital Service the Secretary made payments under the Medicare program to Hillside Nonprofit.

Nonprofit of the debts and other obligations of Hillside Profit.

In its Medicare Cost Reports filed with Hospital Service for the fiscal years ending June 1967, June 1968, and June 1969, Hillside Nonprofit claimed reimbursement for depreciation expenses on the hospital building based on the price paid for that building. In addition, Hillside Nonprofit claimed interest expenses incurred in connection with its notes to Hillside Associates. Hospital Services disallowed part of these claims on the grounds that the sale of the land and the hospital building was a transaction between "related parties" within the meaning of 20 C.F.R. section 405.427 as it modifies 20 C.F.R. section 405.415,[3] and that Hillside Nonprofit was therefore required to figure its depreciation costs on the basis of the cost of the building to Hillside Associates rather than on the price paid by Hillside Nonprofit. Hospital Services also ruled that Hillside Nonprofit was not entitled to reimbursement for its interest costs because the interest was incurred in a transaction between related parties. See 20 C.F.R. § 405.419.[4] Hillside Nonprofit appealed this

---

**3.** 20 C.F.R. section 405.427(a), (b), and (c) provides:

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

(b) *Definitions*—(1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) *Control.* Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

(c) *Application.* (1) Individuals and organizations associate with others for various reasons and by various means. Some deem it appropriate to do so to assure a steady flow of supplies or services, to reduce competition, to gain a tax advantage, to extend influence, and for other reasons. These goals may be accomplished by means of ownership or control, by financial assistance, by management assistance, and other ways.

(2) Where the provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owner(s) of the provider, in effect the items are obtained from itself. An example would be a corporation building a hospital or a nursing home and then leasing it to another corporation controlled by the owner. Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization. However, if the price in the open market for comparable services, facilities, or supplies is lower than the cost to the supplier, the allowable cost to the provider shall not exceed the market price.

20 C.F.R. section 405.415(a), (b), and (g) provides in pertinent part:

(a) *Principle.* An appropriate allowance for depreciation on buildings and equipment is an allowable cost. The depreciation must be:

(1) Identifiable and recorded in the provider's accounting records;

(2) Based on the historical cost of the asset or fair market value at the time of donation in the case of donated assets; and

(3) Prorated over the estimated useful life of the asset . . . .

(b) *Definitions*—(1) *Historical costs.* Historical cost is the cost incurred by the present owner in acquiring the asset. . . .

(g) *Establishment of cost basis on purchase of facility as an ongoing operation.* In establishing the cost basis for a facility purchased as an ongoing operation after July 1, 1966, the price paid by the purchaser shall be the cost basis where the purchaser can demonstrate that the sale was a bona fide sale and the price did not exceed the fair market value of the facility at the time of the sale. The cost basis for depreciable assets shall not exceed the fair market value of those assets at the time of sale. If the purchaser cannot demonstrate that the sale was bona fide, the purchaser's cost basis shall not exceed the seller's cost basis, less accumulated depreciation. . . .

The question whether section 405.427 does in fact modify section 405.415 is addressed by the court in this order, *infra.*

**4.** 20 C.F.R. section 405.419(a), (b), and (c) provides in pertinent part:

(a) *Principle.* Necessary and proper interest on both current and capital indebtedness is an allowable cost.

decision to the Blue Cross Association Medicare Provider Appeals Committee (hereinafter "Appeals Committee") and, after a hearing, the decision to disallow reimbursement was upheld. This lawsuit followed. The issues before the court are whether the sale in question was a sale between related parties within the meaning of 20 C.F.R. section 405.427 and, if it was such a sale, whether Hillside Nonprofit is nevertheless entitled to reimbursement for its depreciation and interest expenses under 20 C.F.R. sections 405.415 and 405.419.

### Jurisdiction

Under the provisions of the Medicare Act, an individual beneficiary may obtain an administrative hearing and judicial review of a final decision regarding either his eligibility or the amount of benefits due him. 42 U.S.C. §§ 1395ff(b) (1970), 405(b), (g) *as amended* (Supp. IV, 1974). When the instant action arose, however, a provider of services could obtain review only of eligibility determinations. 42 U.S.C. § 1395ff(c) (1970).[5] Thus, the claim presented here is not one for which the Medicare Act specifically authorizes judicial review. In addition, the court recognizes that the language of section 205(h) of the Social Security Act, 42 U.S.C. § 405(h),[6] as incorporated into the Medicare Act, 42 U.S.C. § 1395ii, would preclude federal question jurisdiction (under 28 U.S.C. § 1331) in the instant case. *Hazelwood Chronic & Convalescent Hospital, Inc. v. Weinberger*, 543 F.2d 703 at 705 (9th Cir. 1976); *see Weinberger v. Salfi*, 422 U.S. 749, 761, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522, 536 (1975).

■ Nevertheless, the court recognizes that "this conclusion does not end our inquiry. It is appropriate to consider other possible bases for jurisdiction . . . ." *Hazelwood, supra* at 705. Accordingly, the court notes that jurisdiction in the instant case may be founded in the judicial review provisions of the APA, 5 U.S.C. §§ 701–06. *Rothman v. Hospital Service*, 510 F.2d 956, 958–60 (9th Cir. 1975); *Hazelwood Chronic & Convalescent Hospital, Inc. v. Weinberger*, 543 F.2d 703 (9th Cir. 1976). In so holding, the Ninth Circuit Court of Appeals

(b) *Definitions—*(1) *Interest.* Interest is the cost incurred for the use of borrowed funds. Interest on current indebtedness is the cost incurred for funds borrowed for a relatively short term. This is usually for such purposes as working capital for normal operating expenses. . . .

(c) *Borrower-lender relationship.* (1) To be allowable, interest expense must be incurred on indebtedness established with lenders or lending organizations not related through control, ownership, or personal relationship to the borrower. Presence of any of these factors could affect the "bargaining" process that usually accompanies the making of a loan, and could thus be suggestive of an agreement on higher rates of interest or of unnecessary loans. Loans should be made under terms and conditions that a prudent borrower would make in arms-length transactions with lending institutions. The intent of this provision is to assure that loans are legitimate and needed, and that the interest rate is reasonable. Thus, interest paid by the provider to partners, stockholders, or related organizations of the provider would not be allowable. Where the owner uses his own funds in a business, it is reasonable to treat the funds as invested funds or capital, rather than borrowed funds. Therefore, where interest on loans by partners, stockholders, or related organizations is disallowed as a cost solely because of the relationship factor, the principal of such loans shall be treated as invested funds in the computation of the provider's equity capital under § 405.429.

(2) Exceptions to the general rule regarding interest on loans from controlled sources of funds are made in the following circumstances. Interest on loans to providers by partners, stockholders, or related organizations made prior to July 1, 1966, is allowable as cost, provided that the terms and conditions of payment of such loans have been maintained in effect without modification subsequent to July 1, 1966. . . .

5. Recent amendments have changed this situation so that payments to providers are now reviewable by a Provider Reimbursement Review Board and, ultimately, by the district courts. 42 U.S.C. § 1395oo (Supp. IV, 1974), *as amended* (U.S.C.A.Supp. Mar. 1976). This change was not effective for accounting periods ending before June 30, 1973, however.

6. The third sentence of section 405(h) states: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [28 U.S.C. § 1331, *inter alia*] to recover on any claim arising under this subchapter."

has distinguished *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (a case in which jurisdiction under the APA was alleged), on the ground that unlike the Social Security Act interpreted in *Salfi*, the provisions of the Medicare Act applicable at the time the instant action was brought did not authorize judicial review of provider claims. *Hazelwood, supra* at 706–07. Thus, to interpret section 405(h) as precluding all review outside of the Medicare Act—such as review under the APA—would bar judicial inquiry even where significant constitutional questions are involved. Therefore, the court concludes that the judicial review provisions of the APA confer subject matter jurisdiction on the court.

### Standard of Review

At the outset, it is necessary to note the standard of review to be applied by the court when reviewing the finding of the Appeals Committee. First, as the Supreme Court has stated:

> The standard to be applied in determining whether the [Secretary] exceeded the authority delegated to [him] . . . is well established . . .. Where the empowering provision of a statute states simply that the agency may "make . . such rules and regulations as may be necessary to carry out the provisions of this Act," we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is "reasonably related to the purposes of the enabling legislation." *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 280–281 [89 S.Ct. 518, 525, 21 L.Ed.2d 474, 483 (1969)].

*Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318, 329 (1973) (footnote omitted). Second, it is established that the court should show great deference to the interpretation given a statute by the officers or agency charged with its interpreta-

tion. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1964). This rule is particularly applicable when construction of an administrative regulation is involved. *Id.* at 16–17, 85 S.Ct. 792. Moreover, under 5 U.S.C. section 706, which describes the scope of judicial review of agency actions, the only agency actions subject to court disapproval are those that are:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2)(A)–(F). In the instant case, therefore, the court must give weight to the findings of the Secretary to the extent that they are neither arbitrary, capricious, nor unsupported by substantial evidence.

### The Related Parties Issue

Applying the above-stated standard to the instant case, the court concludes that the Appeals Committee's finding of relatedness must be upheld. In order for an organization to be "related to [a] provider" there must exist either common ownership or common control of the two organizations involved. 20 C.F.R. § 405.427(b)(1). Plaintiff asserts that there could have been no common ownership between Hillside Associates and Hillside Nonprofit because Hillside Nonprofit, as a nonprofit corporation, has no owners.[7] Assuming that claim to be correct,[8] the crucial question becomes

---

7. The residual beneficiary of the corporation is the Seventh Day Adventist Church.

8. The record of the hearing before the Appeals Committee reveals that the decision of that committee was based upon the issue of control, not the issue of ownership.

whether there existed common control over Hillside Associates and Hillside Nonprofit.

The relevant regulation defines control as follows:

Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

20 C.F.R. § 405.427(b)(3). The parties seemingly agree that at the time of the transaction in question three members of the board of directors of Hillside Nonprofit held a combined ownership interest in Hillside Associates of at least 46.5 percent. It was this interrelationship between the two entities—the potential for control vested in three persons—that apparently caused the Appeals Committee to find that Hillside Associates was related to Hillside Nonprofit. Record of Appeals Committee Proceedings (hereinafter "Appeal Record") at 3, 110. The controversy over the validity of this finding is based upon opposing interpretations of the concept "control."

Defendants assert that control is coterminous with the "power, directly or indirectly, significantly to influence or direct the policies of an organization or institution." 20 C.F.R. § 405.427(b)(3). Plaintiff cites section 1004.3 of the Medicare Provider Reimbursement Manual both for the proposition that in determining the existence or non-existence of control the *reality* of control is decisive and for the rule that "[t]he facts and circumstances in each case must be examined to ascertain whether legal or effective control does, in fact, exist." Plaintiff argues that the Appeals Committee's finding was erroneous because it ignored factual data in the record. Specifically, plaintiff asserts that the Appeals Committee was not aware that Hillside Associates was actually administered by an administrative committee selected by the members of Hillside Associates; nor was it aware that the three directors of Hillside Nonprofit who were also members of Hillside Associates (Dr. Woods, Dr. Aagaard, Miss Munroe) could control only one member of the administrative committee out of five.

Plaintiff also asserts that the Appeals Committee ignored the lack of participation by Dr. Woods in the affairs of either Hillside Associates or Hillside Nonprofit; that the Appeals Committee ignored the evidence that the board of directors was intentionally kept small until a tax exemption was obtained; and that even if control was exercised through Dr. Woods as between Hillside Associates and Hillside Nonprofit it was not significant enough to make those entities "related." The court rejects the last three arguments outright because the Appeal Record contains abundant evidence that the Appeals Committee did in fact receive testimony regarding these matters and apparently considered them in making its final report. Appeal Record at 3, 16, 25–27, 29–31, 33–34, 53–57, 73–75, 81–88, 97, 101, 104–110. Plaintiff's first assertion—that the Appeals Committee was not aware of the existence or function of the administrative committee—is borne out by the Appeal Record; but the Appeals Committee's ignorance of this fact does not render the decision reached arbitrary, capricious, or unsupported by substantial evidence. First, plaintiff does not explain how the administrative committee functioned, so it is not clear how the committee governed Hillside Associates. More important, Dr. Barr, who was not a director of Hillside Nonprofit and to whom plaintiff attributes control of 20 percent of the administrative committee, no longer possessed an interest in Hillside Associates at the time of the transaction. Appeal Record at 24–25, 38–39, 41, 89. Thus, it appears that control of Hillside Associates was indeed vested in a small group, dominated by the three directors of Hillside Nonprofit. In addition, the leasehold agreement between Hillside Associates and Hillside Profit was signed by all of the Hillside Associates joint venturers (except Dr. Barr), which belies the claim that the administrative committee truly controlled Hillside Associates. Appeal Record at 263–64. Finally, that portion of the joint venture agreement relied upon by plaintiff speaks only of the "administration" of the joint venture; it does not appear to be an

agreement regarding "control." Appeal Record at 238.

■ In view of the above, the court concludes that the Appeals Committee evaluated this case with an awareness of the equities involved, and that the Appeals Committee thoroughly considered those aspects of the transaction (with the exception of one · the court has just determined would not have been resolved in plaintiff's favor in any event) that plaintiff claims it should have considered. More important, the court finds that the evidence substantially supports the decision of the Appeals Committee and that the decision of that body was neither arbitrary nor capricious. The decision regarding the relation between Hillside Associates and Hillside Nonprofit is sustained.[9]

### Reimbursement for Depreciation Expenses Under 20 C.F.R. Section 405.415

Plaintiff contends that under the provisions of 20 C.F.R. section 405.415(g), so long as a sale is bona fide and the price does not exceed the fair market value of the facility at the time of the sale, a provider is entitled to use as its cost basis for purposes of figuring depreciation expenses the price paid by the provider for the facility. Defendants respond that section 405.415(g) is modified by section 405.427(a), which provides:

> Costs applicable to services, facilities, and suppliers furnished to the provider by organizations related to the provider by *common ownership or control* are includable in the allowable cost of the provider *at the cost to the related organization.*
> . . .

(emphasis added.) This raises the preliminary question whether section 405.427 controls the application of section 405.415 where sale of a building is involved.

Plaintiff argues that section 405.427 contemplates an ongoing relationship between the provider and the furnisher of services, facilities and supplies, and that the section was not meant to apply to the one-time sale of a building. Defendants argue that the sale of a building is the "furnishing" of a facility, and assert that if the building is sold (i. e., "furnished") by an organization related to the provider, then the cost of the building must be taken to be the cost to the seller and not the price paid by the buyer. Plaintiff's position is buttressed by the recent decision of another district court in *South Boston General Hospital v. Blue Cross of Virginia (HEW),* 409 F.Supp. 1380 (W.D.Va.1976), in which Judge Dalton looked to the language of section 405.427 and found that it clearly applies only to ongoing relationships. With due deference to that decision, this court cannot agree that section 405.427 must be applied only to ongoing relationships. Although section 405.427 is couched in the present tense, the underlying purpose of the section is to prevent artificial inflation of costs in transactions between related entities. It would therefore defeat the purpose of the section to make an artificial distinction between transactions involving the leasing of a building (a "present-tense" event) and those involving the sale of a building (a "past-tense" event). In addition, since the same rules of construction apply to administrative regulations as apply to statutes, *Rucker v. Wabash Railroad Company,* 418 F.2d 146, 149 (7th Cir. 1969), and since the promulga-

9. The court is aware of the recent decision in another district severely restricting the application of the related parties doctrine. *South Boston General Hospital v. Blue Cross of Virginia (HEW),* 409 F.Supp. 1380 (W.D.Va., 1976). The court agrees with the decision in *South Boston* to the extent that it acknowledges the potentially inequitable outcome of a rigid application of the related parties doctrine. As demonstrated above, however, the record in the instant case shows that the Secretary closely scrutinized the transaction at issue and made a decision that is supported by the evidence. Moreover, it is not clear to this court that the degree of scrutiny mandated by the court in *South Boston* is necessarily applicable to a generalized agency rule without first determining that the difficulties inherent in a close screening of every transaction do not outweigh the congressional policies the rule is designed to effect. See *Weinberger v. Salfi,* 422 U.S. 749, 784–85, 95 S.Ct. 2457, 2476, 45 L.Ed.2d 522, 550 (1975).

tor of regulations is "presumed to use words in their known and ordinary significance," *Kramer v. Government of Virgin Islands,* 453 F.2d 1246, 1247 (3d Cir. 1971), *citing Commissioner of Internal Revenue v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75, 82 (1965), the sale from Hillside Associates to Hillside Nonprofit may reasonably be viewed as the "furnishing" of "facilities." Finally, to recognize the distinction urged by plaintiff would ignore both the presumption of regularity attached to agency interpretation of its own, validly promulgated regulations, *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965), and the "plain wording" of section 405.427 as it deals with a specific area, *Bulova Watch Co., Inc. v. United States,* 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72, 75 (1961) (specific statute controls general statute).

■ Having found that section 405.427 applies to the sale of a building (here, a hospital) by an organization related to the provider, the court now turns to the issue whether section 405.427 modifies section 405.415, which permits the provider to use the price paid for the facility in determining depreciation so long as the sale was bona fide and the price paid did not exceed the fair market value of the facility. The court finds that section 405.427 does so control section 405.415. This is so because under the rules of statutory construction a more specific section controls a more general section, *Bulova Watch Co., Inc. v. United States, supra,* and to apply a different rule here would render section 405.427 superfluous.

*Reimbursement for Interest Expenses Under 20 C.F.R. Section 405.419*

■ Section 405.419(c) provides in part: To be allowable, interest expense must be incurred on indebtedness established with lenders or lending organizations not related through control, ownership, or personal relationship to the borrower. . . . The intent of this provision is to assure that loans are legitimate and needed, and that the interest rate is reasonable.

The court concludes that the regulation is dispositive of the question whether plaintiff is entitled to reimbursement for its interest expenses on the notes to Hillside Associates, because the regulation explicitly states that interest is not allowable if it is incurred on an indebtedness held by an entity related to the borrower through control. Plaintiff argues that since the transaction involved in the instant case was fair, the policies underlying section 405.419(c) would not be offended were the interest expenses reimbursed. Plaintiff urges that inflexible application of section 405.419 in situations where the loan does not contravene the policies underlying the section would amount to an unconstitutional irrebuttable presumption. *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1975). The court rejects this argument.

■ First, the Supreme Court has established that in the context of social welfare programs, a classification will not be voided just because it "is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970), *quoting Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911). If there is some "reasonable basis" for the rule, it must be upheld. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970). This rule was more recently expressed in *Weinberger v. Salfi,* 422 U.S. 749, 767–85, 95 S.Ct. 2457, 2467–2476, 45 L.Ed.2d 522, 539–550 (1974). The court finds that the classification involved in the instant case has a reasonable basis, "to assure that loans are legitimate and needed, and that the interest rate is reasonable." Second, unlike the statutory scheme in *Vlandis,* 412 U.S. at 449, 93 S.Ct. 2230, at 2235, 37 L.Ed.2d at 69 the Medicare Act and its implementing regulations do not purport to speak in terms of the nature of the relationship between entities and then make plainly relevant evidence of that relationship inadmissible.

Rather, as in *Starns v. Malkerson,* 326 F.Supp. 234 (D.Minn.1970), *aff'd,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), the benefits sought in the instant action are available upon compliance with objective criteria considered by the legislative body to bear a sufficiently close nexus with the underlying policy objectives to be used as a test for eligibility. Finally, under 42 U.S.C. section 1395hh, the Secretary is empowered to "prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter." This is the same type of agency power that has been historically upheld so long as it is "reasonably related" to the purposes of the enabling legislation. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318, 329 (1973).

In view of the foregoing, the court finds that there is no "genuine issue as to any material fact" in this matter and that the defendants are entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c).[10]

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.

Defendants are directed to submit a form of judgment in conformity with the court's order.

---

10. This disposition of the case renders unnecessary the consideration of the applicability of section 1008 of the Medicare Provider Reimbursement Manual.