The TRUSTEES OF INDIANA UNIVERSITY (Indiana University Hospitals)

v.

The UNITED STATES.

No. 71–78.

United States Court of Claims.

March 19, 1980.

William S. Hall, Indianapolis, Ind., attorney of record, for plaintiffs. Hall, Render & Killian, Indianapolis, Ind., of counsel.

John W. Showalter, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant. Sanford Teplitsky, Dept. of H. E. W., Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and KUNZIG, Judge.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

The question in this case is whether the Indiana University Hospitals are entitled to reimbursement under the Medicare Act (42 U.S.C. § 1395x(v)(1)(A) (1976)) for the interest the hospitals paid to Indiana University on money they borrowed from it. The Blue Cross Association, which the hospitals selected as their fiscal intermediary to determine the amount of reimbursement to which they are entitled under the Medicare statute, denied reimbursement on the ground that a Medicare regulation limits reimbursement of interest to amounts paid to nonrelated persons. Both parties have moved for summary judgment, and we heard oral argument. We conclude that the plaintiffs are entitled to reimbursement for the interest. Therefore we deny the defendant's and grant the plaintiffs' motion for summary judgment.

### I.

The plaintiffs, the Trustees of Indiana University, operate Indiana University, a State university. Indiana University Hospitals are a part of the University and its Medical Center. The hospitals provide services to low-income patients under the Medicare Act, and, under the Act, as a "provider" of those services, are entitled to reimbursement for their reasonable costs of doing so.

The relationship of the hospitals to the University and to the State of Indiana is unique. They are state teaching hospitals, but receive no money from the State for their operations. Although the State of Indiana provides funds for the University, State law prohibits the use of any of those funds for the hospital. Since the hospitals are not a separate legal entity, they cannot borrow money from outside the University. If the hospitals cannot support themselves through the fees they collect, they must borrow from the University itself.

Beginning in 1968, the hospitals borrowed money from the University's general fund to compensate for their operating losses. The University charged 5 percent annual interest, which it subsequently increased to 6 percent; the interest rate consistently has been below the prime rate.

The hospitals paid the University interest of $221,488 for the fiscal year ending June 30, 1970, and $317,005 for the fiscal year ending June 30, 1971. The portions of those interest payments attributable to the hospitals' provision of Medicare services were $24,054 and $37,597, respectively. The University sought reimbursement for that interest, but the Blue Cross Association denied it. The University then filed in the United States District Court for the Southern District of Indiana the present suit to recover those amounts. The district court transferred the case to this court pursuant to 28 U.S.C. § 1406(c) (1976).

## II.

A. The Medicare program was established pursuant to subchapter XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. (1976), to provide health insurance for the aged and disabled. Under the program, hospitals are certified to treat eligible patients and reimbursed for the "reasonable costs" of the services provided. Id. § 1395f(b)(1). Section 1395x(v)(1)(A) defines what is reimbursable and authorizes the Secretary of Health, Education, and Welfare to promulgate regulations governing the procedures and the standards for making that determination:

The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services . . . . Such regulations shall (i) take into account both direct and indirect costs of providers

of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, and (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.

The Secretary has promulgated regulations specifying the costs that are reimbursable. Principles of Reimbursement for Provider Costs and for Services by Hospital-Based Physicians, 42 C.F.R. § 405.401 et seq. (1979). "[T]he principles give recognition to such factors as depreciation, interest, bad debts, educational costs, compensation of owners, and an allowance for a reasonable return on equity capital of proprietary facilities." Id. § 405.402(c).

Section 405.419(a) provides: "Necessary and proper interest on both current and capital indebtedness is an allowable cost." Section 405.419(b)(3)(ii) states that to be "proper" interest, the money must "[b]e paid to a lender not related through control or ownership, or personal relationship to the borrowing organization."

The regulation then explains the reason for and scope of the prohibition against reimbursement for loans between related parties:

Presence of any of these factors could affect the "bargaining" process [that] usually accompanies the making of a loan, and could thus be suggestive of an agreement on higher rates of interest or of unnecessary loans. Loans should be made under terms and conditions that a prudent borrower would make in arms-length transactions with lending institutions. The intent of this provision is to assure that loans are legitimate and needed, and that the interest rate is reasona-

ble. Thus, interest paid by the provider to partners, stockholders, or related organizations of the provider would not be allowable.

*Id.* § 405.419(c)(1).

The regulation provides three exceptions, which do not touch on the issues in this case. It also provides that if a provider "operated by members of a religious order borrows from the order, interest paid to the order is an allowable cost." *Id.* § 405.-419(c)(2).

There have been three district court cases challenging the ban on reimbursement of interest to related persons; two courts have upheld the regulation, and one has invalidated it.[1] Although the parties vigorously argue the validity of the regulation, we find it unnecessary to reach that issue because we construe the regulation as not prohibiting reimbursement for the interest payments here allowed.

■ B. Read literally and without regard to the other provisions or the purpose of the regulation and to the underlying statute (as the defendant would have us read it), the bar on reimbursement for payments to related organizations would appear to cover this case. The lender here, Indiana University, is "related through control or ownership . . . to the borrowing organization [the hospitals]." "It is [, however,] a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.'" *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 2727, 61 L.Ed.2d 480 (1979) (quoting *Church of Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892)). Indeed, if the "plain meaning" of a statute produces an "unreasonable" result " 'plainly at variance with the policy of the legislation as a whole' " the courts have "followed that

purpose, rather than the literal words." *United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940). These principles are no less applicable in construing administrative regulations. *Rucker v. Wabash Railroad Co.*, 418 F.2d 146 (7th Cir. 1969). Moreover, a regulation must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute it implements. *See, e. g., Clark v. United States*, 220 Ct.Cl. ——, 599 F.2d 411 (1979); *Farrell Lines, Inc. v. United States*, 204 Ct.Cl. 482, 499 F.2d 587 (1974).

■ In light of these principles, we conclude that the regulation does not bar reimbursement for the interest the hospitals paid to Indiana University. As the regulation itself indicates, its purpose is to protect the government against paying the cost of collusive loans with inflated interest rates that are designed to benefit enterprises associated with providers of Medicare services. The relationships the regulation describes indicate the evils against which the ban is directed: (1) persons or an organization who control the hospital (e. g., a member of the board of directors or manager); (2) persons or an organization who own the hospital (e. g., a commercial venture which runs a proprietary hospital); (3) persons who have a personal relationship with the hospital (e. g., a staff doctor). In each of these instances, the other party, because of its own interests, may unduly influence the hospital's decision to the prejudice of the government if the latter reimburses the hospital for the interest payments.

None of these evils is present in the loan between Indiana University and Indiana University Hospitals. Neither party had a profit motive. To the contrary, Indiana University could have received a greater return on its money by investing it else-

1. *Caylor-Nickel Hosp. v. Califano*, No. F77–83 (N.D.Ind. Sept. 10, 1979) (regulation constitutional; loans from doctors who managed the hospital and from associated clinic); *Hillside Community Hosp. v. Mathews*, 423 F.Supp. 1168 (N.D.Cal.1976) (regulation constitutional; payment for purchase of building from compa-

ny owned in part by members of hospital board of directors); *South Boston Gen. Hosp. v. Blue Cross*, 409 F.Supp. 1380 (W.D.Va.1976) (regulation invalid as contrary to purpose of Act to reimburse for reasonable costs; loan on purchase of building from predecessor hospital).

where. The charged interest, moreover, was far below the market rate, and the loans were made because the University was the sole source the hospitals could turn to for operating capital. The University does not "own" the hospitals; both are State institutions. Its control over the hospitals is also limited. The hospitals receive income not from the University or from the State but from fees charged for their services. They thus are run separately from the educational functions of the University which receive direct state funding. The problem of a "personal relationship" described in the regulation does not apply to these parties.

The Medicare statute requires reimbursement for the "reasonable costs" of the services provided, and the regulation recognizes that "[n]ecessary and proper interest . . . is an allowable cost." There is nothing to indicate or even suggest that the interest the hospitals paid to the University, which was below the going rate and was paid to the only source from which the hospitals could borrow, was either unnecessary or improper. In light of the purposes of the statute and the regulations as a whole to reimburse providers of Medicare services for their reasonable costs in providing those services, we conclude that the plaintiffs are entitled to reimbursement of the portions of the interest the hospitals paid to the University in 1970 and 1971 that are attributable to the provision of Medicare services.

■ C. Our conclusion also is supported by the settled principle that a statute should be construed so as to avoid any serious doubts concerning its constitutionality. *E. g., Califano v. Yamasaki,* 442 U.S. 82, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *United States v. Vuitch,* 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); *United States v. Rumely,* 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770 (1953). The same principle is equally applicable to administrative regulations. *See Rucker, supra,* 418 F.2d at 149.

As noted earlier, the regulation has an explicit exception for interest paid to a religious order by a provider operated by members of the order. Denying reimbursement of interest payments by a nonprofit hospital to its affiliated university while permitting reimbursement of payments to an affiliated religious order would raise serious questions under the first amendment, which generally prohibits the government from giving special favored treatment to a religious entity. *E. g., Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Our interpretation of the regulation avoids that problem.

Indeed, the explicit exception to the prohibition against reimbursement of interest payments to related persons for religiously-affiliated entities further supports our conclusion that the prohibition does not cover the interest payments in this case. The evils against which the prohibition is directed are no more present where the related person to which the payments are made is a university than where it is a religious order. Since the Secretary specifically excepted the latter category from the prohibition, it is reasonable to interpret the regulation as also excepting the former.

In holding for the plaintiffs in this case, we stress the limited scope of our decision. We are not holding that interest payments to a related person are reimbursable wherever the particular relationship does not involve any of the evils against which the regulation is directed. Nor are we casting any doubt upon the authority of the Secretary to adopt his prophylactic regulation generally barring reimbursement of interest payments to related persons, without inquiry into the particular circumstances. *Cf. Pasadena Hospital Association v. United States,* 618 F.2d 728, (Ct.Cl. No. 317–77, decided today. We hold only that in the particular and unusual circumstances of this case—where the nonprofit hospital is affiliated with a State university, the State appropriates no money for the hospital, the hospital is prohibited by State law from borrowing from outside sources, and the university lends the hospital essential funds at less than the current rate of interest—

the prohibition in the regulation against reimbursement of interest paid to a related organization is inapplicable.

## CONCLUSION

The plaintiffs are entitled to recover. The defendant's motion for summary judgment is denied, the plaintiffs' motion for summary judgment is granted, and the case is remanded to the Trial Division to determine the amount of recovery pursuant to Rule 131(c).

KUNZIG, Judge, concurring:

I concur with the opinion for plaintiffs in this case and wish to emphasize its consistency with the court's decision issued today in *Pasadena Hospital Association, Ltd. v. United States,* 618 F.2d 728, No. 317–77 (Ct.Cl.1980) wherein I join the decision for defendant.

First, *Pasadena* involves a different regulation, 42 C.F.R. § 405.427 "Cost to related organization," the thrust of which is, as the decision in *Pasadena* notes, to define what are includable *costs* for the purpose of reimbursement. In the instant case the regulation, 42 C.F.R. § 405.419(c), is designed to assure that reimbursable interest expenses are *reasonable.* "The intent of this provision is to assure that loans are legitimate and needed, and that the interest rate is reasonable." 42 C.F.R. § 405.419(c)(1). The refusal to reimburse plaintiffs their interest expenses in *Indiana University* is directly contrary to this explicit purpose. A similar situation does not exist in *Pasadena.*

Second, the decision herein is concerned with avoiding questions of the regulation's validity on constitutional grounds. The regulation draws an exception for interest payments by a provider operated by members of a religious order made to that order. Denying reimbursement to nonprofit Indiana University Hospitals yet permitting interest payment reimbursement to an affiliated religious order could well raise a first amendment question. Our decision herein avoids that problem. This factor is entirely absent from the court's consideration of *Pasadena.*

These two aspects of *Indiana University,* the different nature of the regulation involved, the presence of the constitutional question, plus the unique factual circumstances enumerated herein, serve clearly to distinguish this case from the approach outlined in *Pasadena.*