**REGENTS OF the UNIVERSITY OF CALIFORNIA, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary, Health & Human Services; Provider Reimbursement Review Board, Defendants–Appellees.**

**No. 94–56475.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1996.

Decided April 17, 1996.

Russell W. Chittenden, Assistant United States Attorney, Los Angeles, California, for defendant-appellee.

Before: HARRY PREGERSON and T.G. NELSON, Circuit Judges, and DAVID A. EZRA,* District Judge.

T.G. NELSON, Circuit Judge:

## OVERVIEW

Regents of the University of California ("Regents") appeals the district court's summary judgment in favor of the Secretary of Health and Human Services in Regents' action under Title XVIII of the Social Security Act, 42 U.S.C. § 1395oo(f)(1), challenging the Secretary's decision to deny Medicare reimbursement for patient expenses attributable to interest costs incurred on working loans from Regents to three University hospitals ("providers").

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Regents owns and operates the three Medicare providers on whose behalf this appeal is taken, UCLA Medical Center, UC Irvine Medical Center, and UCSD Medical Center. The providers are not separate legal entities from the Regents and, as such, cannot sue, be sued, enter into contracts, or perform other legal functions in their own names, including borrowing monies from outside sources.

In 1982, 1983, 1984, and 1985, Regents made working capital loans to the providers. It is undisputed that the proceeds from the loans were used for necessary and proper purposes related to patient care. These loans were necessitated by a budget shortfall resulting from a decrease in funding from the state legislature.

Robert Barnes, Oakland, California, for plaintiff-appellant.

* Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

The providers filed claims for Medicare reimbursement for the interest expenses associated with these loans. The claims were initially reviewed by the fiscal intermediary, Blue Cross in this case, and were denied on the basis of 42 C.F.R. § 405.419 (1985), which disallows reimbursement for interest expenses on loans between related organizations. Regents appealed to the Provider Reimbursement Review Board ("PRRB"), which affirmed the intermediary and disallowed the interest expense. On review, the district court granted the Secretary's motion for summary judgment.

## ANALYSIS

### I.  Standard of Review

■■■ We review a grant of summary judgment order *de novo. Rendleman v. Shalala,* 21 F.3d 957, 960 (9th Cir.1994). Judicial review of Medicare reimbursement disputes under 42 U.S.C. § 1395oo(f)(1) is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"). Under the APA, "[r]eview is limited to determining whether the Secretary's action was arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole." *Vallejo Gen. Hosp. v. Bowen,* 851 F.2d 229, 231 (9th Cir.1988).

■■■ When the meaning of a provision within the expertise of an agency is involved, the agency's expertise makes it particularly suited to interpret the language. *Pacific Coast Medical Enters. v. Harris,* 633 F.2d 123, 131 (9th Cir.1980). In such cases, we will generally afford deference to the agency's construction of its own regulation.

■■■ Review of an agency's interpretation of its regulations involves a two-pronged analysis. First, we look to the plain language of the regulation. The words of the regulation must be "reasonably susceptible to the construction placed upon them by the Secretary, both on their face and in light of their prior interpretation and application." *Id.* Second, "the Secretary's construction must be reviewed in relation to the governing statute." *Id.* "Agency regulations must be consistent · with and in furtherance of the purposes and policies embodied in the Congressional statute which authorize them." *Id.*

### II.  Statutory Interpretation

■■■ Initially, Regents challenges the Secretary's interpretation of § 405.419(b)(3)(ii), which disallows reimbursement for interest expenses on loans between related organizations. There is no dispute that the providers and Regents are related entities. Further, there is no dispute that the interest expense claimed on the instant loans was below then-existing market rates. Thus, we must determine whether the plain words of the regulation are "reasonably susceptible to the construction placed upon them by the Secretary, both on their face and in light of their prior interpretation and application," *Pacific Coast,* 633 F.2d at 131, and whether the Secretary's application of the prophylactic rule, which deems all expenses arising out of loans between providers and their related organizations *per se* unreasonable, is contrary to Congressional intent.

Under the Medicare Program, as established by Title XVIII of the Social Security Act (42 U.S.C. §§ 1395–95rr), providers of services to Medicare patients are reimbursed for the "reasonable costs" of providing these services. The term "reasonable costs" is generally defined in 42 U.S.C. § 1395x(v)(1)(A):

> [T]he reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included in determining such costs for various types or classes of institutions, agencies, and services. . . .

The precise definition of "reasonable cost" was left to the Secretary. Pursuant to that authority, the Secretary promulgated 42 C.F.R. § 405.419 (1985). Subsection(a) of § 405.419 provides that "[n]ecessary and proper interest on both current and capital indebtedness is an allowable cost." Under

subsection (b)(2)(i) of § 405.419, interest is "necessary" if it is "incurred on a loan made to satisfy a financial need of the provider." Further, interest must be "proper," which requires interest to be "incurred at a rate not in excess of what a prudent borrower would have had to pay in the money market existing at the time the loan was made," § 405.419(b)(3)(i), and be "paid to a lender not related through control or ownership, or personal relationship to the borrowing organization." § 405.419(b)(3)(ii).

Regents asserts that the Secretary's interpretation of § 405.419 to deny reimbursement of interest on operating loans Regents made to its providers "runs afoul of Congressional intent that proper and necessary medicare patient expenses be reimbursed by the medicare program...." Regents argues that because the regulations make exception for § 405.419 in certain related party transactions, other exceptions must be recognized where interest rates on loans between related entities are reasonable, the loan proceeds are necessary for patient care, and the related parties have no profit motive. Regents further contends that the scope of the prophylactic rule in (b)(3)(ii) is defined by the language in § 405.419(c)(1), which states: "The intent of this provision is to assure that loans are legitimate and needed and that the interest rate is reasonable." Thus, according to Regents, the effect of § 405.419(b)(3)(ii) together with (c)(1) is to disallow reimbursement of interest costs on loans between related parties *unless* the loans are necessary, related to patient care, and are made at reasonable interest rates. Regents thus reads the reasons expressed in (c)(1) as exceptions to the general rule of non-reimbursement.

■ In support of its argument, Regents cites *Trustees of Indiana Univ. v. United States*, 223 Ct.Cl. 88, 618 F.2d 736 (1980). In *Indiana*, the hospitals, although not owned by the University, were a part of the University and its medical center. *Id.* 618 F.2d at 737, 740. The court found that the relationship of the hospitals to Indiana University was unique in that the hospitals were state institutions, but, unlike the University, received no money from the state for their operations. Further, although the University received funds from the State of Indiana, Indiana state law prohibited the University from using any of those funds for the hospitals. *Id.* at 737. Because the hospitals were not separate legal entities, they could not borrow money from outside the University. *Id.* As such, the hospitals' only source of funds, other than from collection of fees, was through loans from the University. *Id.*

Presented with those particular circumstances, the *Indiana* court held that the prophylactic rule under § 405.419 was inapplicable. *Id.* at 740–41. The court reasoned that "[t]he evils against which the prohibition is directed are no more present where the related person to which the payments are made is a university than where it is a religious order." *Id.* at 740. However, the court *expressly* limited the holding in *Indiana* to the particular facts of that case:

> In holding for the plaintiffs in this case, we stress the limited scope of our decision. We are not holding that interest payments to a related person are reimbursable wherever the particular relationship does not involve any of the evils against which the regulation is directed. Nor are we casting any doubt upon the authority of the Secretary to adopt his prophylactic regulation generally barring reimbursement of interest payments to related persons without inquiry into the particular circumstances.

*Id.*

In *Indiana*, the University received funds from the state, but pursuant to state law, those funds could not be diverted for the use of the hospitals. *Id.* at 737. Further, the hospitals were prohibited by state law from receiving money from the State of Indiana. *Id.* Therefore, the only way for the hospital in *Indiana* to obtain operating funds was through the University.

Regents' arguments that *Indiana* applies here are unpersuasive. First, in the case at bar, the providers had received state funds in the past, and unlike the situation in *Indiana*, there is no state law prohibiting the providers from receiving funds from the state. Further, prior to the 1981 policy of charging interest on working capital, the providers received working capital *contributions* from

the Regents. Thus, the holding in *Indiana* is a limited exception to the prophylactic rule, and as the *Indiana* court itself warned, its holding should be limited exclusively to the facts particular to that case.

Second, Congress did not require the Secretary to make exceptions to its policy on related party loans for arguably meritorious transactions involving a specific type of related party. In fact, the Secretary's interpretation of the regulation is consistent with the plain language of the regulation and the purpose of the related party restriction as set forth in the regulation itself. Regents' argument that the reasons for the regulation found in (c)(1) should be read as exceptions to the general rule is contrary to the terms of the regulations and certainly contrary to the Secretary's interpretation of the regulation.

Third, in *Goleta Valley Community Hosp. v. Schweiker*, 647 F.2d 894 (9th Cir.1981), we were asked to assess the statutory and constitutional validity of the related party interest rule of § 405.419(b)(3)(ii), and we held that the regulation was valid. Regents argues that *Goleta Valley* may be distinguished from this case because the related parties in *Goleta Valley* had a profit motive. However, there is no indication that the holding in *Goleta Valley* was influenced by this factor. In *Goleta Valley*, we held:

> Once a determination has been made that the organizations are related, the Board need not inquire into whether the reimbursements claimed were reasonable because Regulation [405.419(b)(3)(ii)] operates as a prophylactic rule and defines any charges in excess of actual costs as per se unreasonable.

*Id.* at 897.

Moreover, there is a valid policy reason for upholding the regulation as interpreted by the Secretary. If the exception in *Indiana* were adopted and the Secretary made exceptions for "necessary, below market rate" loans between nonprofit organizations and their related hospitals, then those organizations would have incentive to recharacterize routine, operating capital allocations as "loans" in order to take advantage of the interest expense reimbursement policy of Medicare. In addition, the exceptions would swallow the rule, requiring the case-by-case review the regulations were designed to avoid.

## III. Due Process

■ According to Regents, the effect of the prophylactic rule prohibiting reimbursement of interest expenses for loans between related parties is an irrebuttable presumption which violates Regents' right to due process. *Vlandis v. Kline*, 412 U.S. 441, 447, 93 S.Ct. 2230, 2233–34, 37 L.Ed.2d 63 (1973) ("Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clause of the Fifth and Fourteenth Amendments.").

Regents' argument lacks merit because the law regarding the constitutionality of irrebuttable presumptions in social programs has been well settled. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Goleta Valley*, 647 F.2d at 894. In *Salfi*, the Supreme Court approved of a *per se* rule defining the length of marriage needed to qualify for social security benefits "which sweeps more broadly than the evils with which they seek to deal." 422 U.S. at 784, 95 S.Ct. at 2476. The Court explained:

> The Constitution does not preclude such policy choices as a price for conducting programs for the distribution of social insurance benefits.... There is thus no basis for our requiring individualized determinations when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce.

*Id.* at 785, 95 S.Ct. at 2476.

Other courts have also rejected the irrebuttable presumption challenge to the prophylactic rule under § 405.419. In *Hillside Community Hosp. v. Mathews*, 423 F.Supp. 1168, 1176 (N.D.Cal.1976), the court found that the classification under § 405.419 had a reasonable basis: "[T]o assure that loans are legitimate and needed, and that the interest

rate is reasonable." "[I]n the context of social welfare programs, a classification will not be voided just because it 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Id.* (quoting *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970)). "If there is some 'reasonable basis' for the rule, it must be upheld." *Id.*

In *Caylor–Nickel Hosp. Inc. v. Califano*, N.D. Ind., Civ. No. F 77–83 (Sept. 10, 1979), 1980 Medicare & Medicaid Guide (CCH) ¶ 30,718, citing *Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522, the court held that § 405.419(b)(3)(ii) did not create an unconstitutional irrebuttable presumption:

> *Salfi* dictates that this court reject Caylor–Nickel's characterization of 42 C.F.R. § 405.419(b)(3)(ii) as involving an irrebuttable presumption that all transactions involving organizations related to Caylor–Nickel were illegitimate. The regulation presumes only that many transactions between related institutions are not legitimate, not needed, or not at reasonable interest; the Secretary, acting under statutory authority, has made a policy choice that, in the words of *Salfi*, "limited resources would not be well spent in making individual determinations."

In light of *Salfi, Hillside,* and *Goleta Valley,* we reject the argument that the prophylactic rule barring reimbursement for interest expenses on loans between related organizations violates due process rights under the Medicare Program. The Secretary has the authority to make a policy choice to exclude reimbursement for interest expense arising from loans between related entities.

## IV. Establishment Clause

█ Next, Regents challenges the Secretary's interpretation of 42 C.F.R. § 405.419(c)(1),[1] the provision which precludes related party interest, and § 405.419(c)(2), the provision which creates an exception to the related party interest preclusion for cases where the provider borrows from a related religious order. Subsection (c)(2) provides: "[I]f a provider operated by members of a religious order borrows from the order, interest paid to the order is an allowable cost."

Regents argues that although it does not fall within the plain language of the (c)(2) exception, the Secretary should interpret the exception to cover secular, nonprofit organizations such as itself. According to Regents, if the (c)(2) exception is interpreted categorically to disallow interest reimbursement for secular Medicare providers, it may create an unconstitutional preference for religion in violation of the First Amendment Establishment Clause of the United States Constitution.

Finding that Regents lacked standing to make a First Amendment challenge to the regulations, the district court did not reach the merits of this argument. Regents urges this court to interpret, *sua sponte*, the regulation so as to avoid any unconstitutionality under the Establishment Clause.

For the reasons discussed below, Regents' arguments are unpersuasive. At oral argument, it was conceded by Regents that it was not challenging the constitutionality of the regulation or the exception, in and of themselves. Rather, Regents' Establishment Clause challenge is directed at the *Secretary's interpretation* of the (c)(2) exception.

Regents maintains that the exception found in § 405.419(c)(2) would be appropriate if it was read to include similarly situated non-profit providers and operators who do not collaborate in the establishment of interest charges on loans between each other for the purposes of enhanced profit. Thus, Regents seeks to strike the Secretary's limitation on the exception, not the exception itself. This, we decline to do. If we were to hold

---

1. Section 405.419(c)(1) provides in part:

   To be allowable, interest expense must be incurred on indebtedness established with lenders or lending organizations not related through control, ownership, or personal relationship to the borrower. Presence of any of these factors could affect the "bargaining" process this usually accompanies the making of a loan, and could thus be suggestive of an agreement on higher rates of interest or of unnecessary loans. Loans should be made under terms and conditions that a prudent borrower would make in armslength transactions with lending institutions . . . .

that the Secretary's interpretation of § 405.419(c)(2) violates the Establishment Clause, we would essentially be holding that § 405.419(c)(2) was unconstitutional, because the Secretary's interpretation is wholly consistent with the plain language of the exception. In such case, our remedy would be to strike the exception rather than to rewrite the regulation to create new exceptions or to strike the entire regulation.

 Before we reach the issue of the constitutionality of the (c)(2) exception, we must first determine whether Regents has standing to challenge the Secretary's interpretation of the exception under the Establishment Clause. Standing is reviewed *de novo. United Union of Roofers No. 40 v. Insurance Corp. of Am.*, 919 F.2d 1398, 1399 (9th Cir.1990). "A district court's factual findings on jurisdictional issues must be accepted unless they are clearly erroneous." *Reebok Int'l, Ltd. v. Marnatech Enter., Inc.*, 970 F.2d 552, 554 (9th Cir.1992) (quotations omitted).

To establish standing, we must determine "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Thus, in order to have standing, the complainant must be aggrieved by the agency action within the meaning of the statute. *Id.* The complainant must establish that he has suffered injury in fact. *Id.* However, potential injury may be sufficient to confer standing. *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1048 (9th Cir.1979).

In this case, Regents does not have standing to challenge the constitutionality of the Secretary's interpretation of the (c)(2) exception. Regents failed to establish that it would suffer injury as a result of the (c)(2) exception for religiously affiliated providers. The district court determined that the potential injury to Regents from the application of

the exception for hospitals affiliated with religious organizations is too attenuated to establish standing.

Further, Regents offered no evidence that a favorable decision would sufficiently redress the injury or potential injury. A decision by this court that the Secretary could no longer permit religiously affiliated providers to include interest pursuant to the exception would not benefit Regents, as Regents would still be precluded from including interest by the other terms of the regulation. Without any evidence of injury to Regents as a result of the alleged unconstitutional interpretation of the regulation and without evidence that a favorable ruling would redress the injury, the district court's determination that Regents lacked standing to raise this issue was not erroneous.

## CONCLUSION

For the reasons stated above, the district court's summary judgment is AFFIRMED.