**SOUTH BOSTON GENERAL HOSPITAL**

v.

**BLUE CROSS OF VIRGINIA and Secretary of Health, Education and Welfare.**

**Civ. A. No. 74–C–68–D.**

United States District Court,
W. D. Virginia,
Danville Division.

March 18, 1976.

Harold M. Bates, Bates, Cruey & Lee, Roanoke, Va., and Greenebaum, Doll, Matthews & Boone, Louisville, Ky., for plaintiff.

Carr L. Kinder, Asst. U. S. Atty., Roanoke, Va., for defendants.

## OPINION AND JUDGMENT

DALTON, District Judge.

Petitioner, South Boston General Hospital (hereinafter South Boston), has brought this action seeking review of a final determination by the Secretary of Health, Education and Welfare (hereinafter the Secretary). Jurisdiction was noted in an opinion by this Court on April 24, 1975. *South Boston General Hospital v. Weinberger*, 397 F.Supp. 360 (D.C.Va.)

The facts of the case are not in dispute. South Boston is a non-profit provider of Medicare benefits under the Medicare Act, 42 U.S.C. § 1395 et seq., (hereinafter the Act) and is seeking a review of a determination by Blue Cross as agent for the Secretary which (1) reduced the depreciation expenses incurred by South Boston in a sale to a related organization and (2) denied the interest expense paid to the related organization. South Boston has exhausted its administrative remedies. Both sides have moved for Summary Judgment.

### FACTS

Plaintiff seeks reimbursement for costs of services incurred in the efficient delivery of needed health services.[1] This

1. The basis for the amounts claimed is found in 42 U.S.C. § 1395x(v)(1)(A), which states:

 The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be deter-mined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services . . . .
 In prescribing the regulations referred to in the preceding sentence, the Secretary shall

issue arose when South Boston General Hospital, petitioner herein, purchased the facilities of South Boston General Hospital, Inc., in June, 1968. The acquisition

consider, among other things, the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. . . . Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter) in order that, under the methods of determining costs the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs . . . .

The applicable sections of regulations pertaining to this controversy are the following:

20 C.F.R. § 405.415(g): *Establishment of cost basis on purchase of facility as an ongoing operation.* In establishing the costs basis for a facility purchased as an ongoing operation after July 1, 1966, the price paid by the purchaser shall be the cost basis where the purchaser can demonstrate that the sale was a bona fide sale and the price did not exceed the fair market value of the facility at the time of the sale. The cost basis for depreciable assets shall not exceed the fair market value of those assets at the time of the sale. If the purchaser cannot demonstrate that the sale was bona fide, the purchaser's costs basis shall not exceed the seller's cost basis, less accumulated depreciation. . . .

20 C.F.R. § 405.419: *Interest expense.*

(a) *Principle.* Necessary and proper interest on both current and capital indebtedness is an allowable cost.

(b) *Definitions*—(3) *Proper.* Proper requires that interest:

(i) Be incurred at a rate not in excess of what a prudent borrower would have had to pay in the money market existing at the time the loan was made.

(ii) Be paid to a lender not related through control or ownership, or personal relationship to the borrowing organization.

(c) *Borrower-lender relationship.* (1) To be allowable, interest expense must be incurred on indebtedness established with lenders or lending organizations not related through control, ownership, or personal relationship to the borrower. Presence of any of these factors could affect the "bargaining" process that usually accompanies the making of a loan, and could thus be suggestive of an agreement on higher rates of interest or of unnecessary loans. Loans should be made under terms and conditions that a prudent borrower would make in arms-length transactions with lending institutions. The intent of this provision is to assure that loans are legitimate and needed, and that the interest rate is reasonable. Thus, interest paid by the provider to partners, stockholders, or related organizations of the provider would not be allowable. . . .

20 C.F.R. § 405.427 *Cost to related organizations.*

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

(b) *Definitions*—(1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) *Control.* Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

(c) *Application.* (1) Individuals and organizations associate with others for various reasons and by various means. Some deem it appropriate to do so to assure a steady flow of supplies or services, to reduce competition, to gain a tax advantage, to extend influence, and for other reasons. These goals may be accomplished by means of ownership or control, by financial assistance, by management assistance, and other ways.

(2) Where provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owners(s) of the provider, in effect the items are obtained from itself. An

by petitioner was in exchange for notes totaling $650,010.00, payable in fifteen annual installments and included interest at four per cent (4%). The purchase was effective July 1, 1968. Since both the proprietary hospital and petitioner were and are qualified as providers of Medicare services under Title 42 U.S.C. § 1395 et seq., they were and are entitled to the reimbursal benefits of direct and indirect costs incurred by them in connection with the delivery of health care services. 42 U.S.C. § 1395x(v)(1)(A). When petitioner filed its 1969, 1970 and 1971 Medicare Costs Reports with Blue Cross of Virginia (the disbursal agent of the Secretary as authorized by 42 U.S.C. § 1395h), it claimed as allowable costs the interest expense paid to the prior owner of the facility and depreciation computed on the basis of the cost of the facility to Petitioner. Respondents denied reimbursement on the basis of the related parties doctrine, as expressed in 20 C.F.R. §§ 405.415, 405.419 and 405.427. This denial has resulted in an alleged loss of $174,000.00 to petitioner.

Petitioner makes the following allegations:

1) The classification of South Boston and the proprietary hospital as related parties was unwarranted and erroneous.

2) Application of 20 C.F.R. § 405.427 to this controversy was erroneous and constitutes reversible error.

3) The regulations applicable to this controversy do not further the purposes for which the Act was enacted, and in this case hinder those purposes.

4) The regulations applicable to this controversy deny petitioner both due process of law and equal protection of the law.

■ The first allegation is clearly erroneous. The entire administration and staff were carried over to the new hospital, and the management remained essentially the same. The proprietary hospital and petitioner are clearly related parties within the meaning of the regulations. The remaining allegations, however, raise important questions and will be dealt with more fully.

### APPLICABILITY OF 20 C.F.R. § 405.427

■ As indicated by its language the thrust of section 405.427 is to avoid self-dealing between related parties *in an ongoing relationship* in which one of the parties is supplying services, facilities or supplies to the other. The present tense is used throughout the section, indicating the continuing viability of both organizations. Examples of this intent can be found in sub-section (b)(1) where it is stated that the "provider . . . *is* associated . . . with or *has* control of or *is* controlled by the organization *furnishing* the services, facilities, or supplies." Subsection (b)(2) reads: "when . . . individuals *possess* significant ownership or equity in the provider and the institution or organization *serving* the provider."

The Secretary contends that inclusion of the term "facilities" clearly encompasses an outright purchase of an entire facility, as in the case at bar. However, sub-section (c)(2) illustrates the proper interpretation to be given the term "facilities." There the example of a leasing arrangement between related parties of an entire facility is set forth.[2] The dis-

---

example would be a corporation building a hospital or a nursing home and then leasing it to another corporation controlled by the owner. Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization. However, if the price in the open market for comparable services, facilities, or supplies is lower than the cost to the supplier, the allowable cost to the provider shall not exceed the market price.

2. 20 C.F.R. § 405.427 was addressed and construed in *Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co.*, 311 F.Supp. 405, 410–1 (E.D.Wis., 1970). That case involved a provider leasing a nursing home from a related supplier or services. A continuing relationship was clearly evident, which fell precisely within the provisions of section 405.427(c)(2) of the

tinction between such a continuing transaction and a single transaction involving the sale of an on-going hospital facility is highlighted by the specific reference to the latter transaction in 20 C.F.R. § 405.415(g). The title of sub-section (g) of section 405.415 (Establishment of cost basis on purchase of facility as an ongoing operation.) mandates a finding that, in determining cost basis for depreciation, section 405.415(g) controls. Likewise, treatment of interest is specifically covered in section 405.419, and that section must be deemed controlling when questions regarding reimbursement of interest arise.

The court finds that 20 C.F.R. § 405.427 is not applicable to this controversy. Plaintiff contends that a determination based on this regulation is reversible error. The court expresses no opinion as to that contention because even if true, denial of reimbursement could be based on the related parties doctrine expressed in sections 405.415(g) and 405.419, if those sections are valid. Therefore, the court will address the validity of those sections, which form the statutory basis for denying reimbursement, regardless of the provisions of section 405.427.

## DO THE REGULATIONS FURTHER THE PURPOSES OF SECTION 1395x(v)(1)(A) OF THE ACT?

▮ Title 42 U.S.C. § 1395x(v)(1)(A) constitutes the statutory guide for the Secretary in the furtherance of his duty to promulgate regulations governing the items which are reimbursable and the amounts of such reimbursements to providers of needed health services. The overriding consideration is the reimbursement of actual costs, found to be not unnecessary in the efficient delivery of needed health services. The Secretary is directed to assure reimbursement of incurred costs to those providing serv-

ices to those covered by the insurance program.

Plaintiff admittedly provides services to those covered by the insurance program. Plaintiff is a "provider" under the Act. Furthermore, capital indebtedness is an allowable cost for which reimbursement is available under 20 C.F.R. § 405.419(a); as is depreciation on buildings and equipment pursuant to 20 C.F.R. § 405.415(a). Further, the cost basis on the purchase of a facility as an ongoing operation is the price paid by the purchaser when the purchaser can demonstrate that the sale was a bona fide sale and the price did not exceed the fair market of the facility at the time of the sale. 20 C.F.R. § 405.415(g). These provisions indicate a recognition by the Secretary that interest on capital indebtedness and depreciation, based on the purchase price of a facility, constitute necessary costs incurred in the efficient delivery of needed health services by a qualified provider under the Act.

Because these items of otherwise reimbursable costs were incurred by plaintiff in a transaction with a related party, the Secretary prohibits reimbursement absolutely. Section 405.415(g) requires proof that the purchase of the facility was a bona fide sale in order to use the purchase price as the cost basis for depreciation purposes, but because the transaction was between related parties, such proof is rendered impossible, notwithstanding the fact that the transaction may be identical to or more advantageous than one between unrelated parties. Section 405.419(c) properly notes the potential dangers inherent in a transaction between related parties, but then assumes that those dangers cannot be avoided and thus prohibits reimbursement of any capital indebtedness between related parties. The Secretary, in effect, refuses to scrutinize transactions between related parties, assuming that all such transactions would result in ex-

---

regulations. The court found a rational basis for the regulation, based in large part on the exception [stated in section 405.427(d)] to the related parties doctrine. The exception distin-

guishes section 405.427 from sections 405.415(g) and 405.419(c), which leave no room for exceptions.

cess claims for reimbursement of incurred costs as a result of this imagined self-dealing. The end result is an inequitable denial of reimbursement for costs incurred, although the entire transaction may have been above-board, for a reasonable purchase price, with reasonable interest, with resulting benefits to the recipients of the services of the provider.

The failure to scrutinize a related parties transaction indicates a serious misplacement of priorities on the part of the Secretary. The Act urges reimbursement of incurred expenses necessary for the efficient delivery of needed health services. This is the prime consideration. If a transaction between related parties can help attain that end, the Secretary must not frustrate that transaction. The court is not unmindful of the potential dangers of such a transaction, and would urge the Secretary to closely scrutinize it, but scrutinize it he must. If any of the possible dangers of such a transaction are indeed present then denial of reimbursement for costs incurred as a result of such a transaction would be appropriate.

■ The court realizes that proper advice prior to the closing of the transaction in question might have enabled petitioner to avoid the confrontation evidenced by this law suit. A financing arrangement through a commercial lender might have been just as satisfactory as the transaction which occurred. Such an arrangement would have avoided consideration of the related parties doctrine by respondents. However, such an argument avoids the issue: Does the related parties doctrine, expressed in the regulations, further the purposes of the Act, or does it erect a roadblock to those who miss a turn and engage in a related parties transaction, albeit in good faith, for a below market value purchase price with entirely reasonable interest rates? The court feels that the roadblock is there; and that it may work, and in this case probably has worked a severe injustice upon petitioner. (See Appendix).

The court feels the roadblock must come down.

Elimination of the regulations prohibiting reimbursement of the incurred costs at issue in this case will not result in widespread abuse of the reimbursement provisions of the Act. All claims for reimbursement of costs are reviewed according to standards already set forth in the regulations. The wording of 20 C.F.R. § 405.415(g) is still viable. In order to claim the purchase price of a facility as an ongoing operation, a provider still has to prove a bona fide sale and a purchase price not in excess of the fair market value at the time of sale. This decision only prohibits an arbitrary determination that a related parties transaction cannot be a bona fide sale, regardless of the circumstances. The court does not say that a related parties transaction is automatically a bona fide sale. The elements of proof that any purchaser/provider must make are applicable to a provider purchasing from a related seller. Such a transaction may require closer scrutiny than a non-related parties transaction, *but it must be scrutinized.*

Similarly, with regard to interest, 20 C.F.R. § 405.419 still retains standards to enable the Secretary to assess whether interest is both "necessary and proper." The standards set forth in sub-section 405.419(b)(2) defining "necessary" are viable in their entirety. The normally accepted definition of "proper" interest set forth in sub-section 405.419(b)(3)(i) retains its vitality and will now apply equally to a provider borrowing from a related party. The potential dangers of related party transactions set forth in sub-section 405.419(c) are important and should continue to be recognized, but the conclusion expressed there, that all such transactions indicate an agreement on higher interest rates or unnecessary loans, must be expunged as without basis in fact, particularly in the case before this court. (See Appendix) It should again be emphasized that a related parties transaction should be closely scrutinized because of its very nature, but

such transactions should not be conclusively characterized as diabolical.

## CONSTITUTIONALITY OF 20 C.F.R. §§ 405.415(g) AND 405.419(c)

Since the court has found the above regulations repugnant to purposes for which 42 U.S.C. § 1395x(v)(1)(A) was enacted, it will express no opinion on the constitutional arguments submitted by petitioner, although they are not without merit.

## CONCLUSION

For the reasons discussed above this case is remanded to the Secretary for reconsideration of petitioner's claims for reimbursement without regard to the related parties doctrine as it has been historically applied.

The clerk is directed to send copies of this opinion and judgment to counsel of record.

## APPENDIX

### MEDICARE PROVIDER APPEAL COMMITTEE DECISION

#### Committee's Decision

The Committee unanimously decides to uphold the Plan's decision with regard to the reduction of the depreciation expense and the denial of interest associated with the conversion of the provider from a proprietary to not-for-profit institution. The Committee finds these two organizations related as defined in Regulation Section 405.427 and Chapter 10 of HIM–15. The old hospital's administration and staff were carried over to the new hospital, and the management remained the same. Five of the nine board members of the new hospital were members of the five man board of the old hospital.

*The Committee reaches this decision reluctantly. The circumstances of this case are such that application of the related parties rule has a particularly harsh effect on the provider. The evidence indicates no intention on the part of the owners of the old hospital to make an unconscionable profit as a result of this transaction. In fact the transaction appears to have been motivated by the desire to provide better service to the community. However, on the basis of its understanding of the applicable Law, Regulations and General Instructions, the Committee sees no supportable alternative to upholding the Plan's position.*

Provider at the hearing and in its post hearing brief argued that if it is not entitled to interest expense and depreciation, it should be entitled to an amount at least equal to a return on equity capital.

Unfortunately, this alternative is not available to provider because it is a nonprofit institution. The Regulations cited in provider's post hearing brief are meant to apply to proprietary, not to nonprofit providers. In this case, provider was denied interest expense and depreciation on the basis of the related organization principle. By returning to the provider's historical cost when it was proprietary institution the Committee is not converting the provider back into a proprietary institution.

It must be remembered that, although nonprofit corporations are not allowed a return on equity, they enjoy many privileges not afforded proprietary institutions; i. e., an exemption from income taxes and other state and local taxes. In fact, the provider had argued that the

main consideration for the sales transaction was to take advantage of the tax benefits available to nonprofit facilities to generate working capital for further expansion. The decision of the Committee was unanimous.

December 27, 1973

Mr. Jesse Lynn
Regional Representative
Bureau of Health Insurance
Social Security Administration
Department of Health Education, and Welfare
Post Office Box 8788
Philadelphia, Pennsylvania 19101

Dear Mr. Lynn:

Re: Mr. Merritt W. Jacoby's Letter Dated August 3, 1973 to Mr. Thomas M. Tierney

As the local Medicare intermediary, it was our responsibility to uphold the regulations regarding the disallowance of depreciation and interest expense due to a transaction between related parties at South Boston General Hospital. Consequently, the provider made an appeal to the Blue Cross Medicare Appeals Committee. The committee upheld our decision; however, it was with reluctance. Likewise, *we reluctantly upheld the regulations based on the knowledge that the provider had acted in good faith to make the transaction bona fide.* This is evident through the following:

1. The sale price of the facility was $650,010 which was above historical cost. This was to be paid over 15 years at an interest rate of 4% per annum. *This interest rate appears to be reasonable.*

2. The Internal Revenue Service gave the provider 501(c)(3) tax status and deemed the sale to be bona fide.

3. *Because of the rural nature of the locale, the only persons with the requisite management experience were the former owners, and they became trustees of the new provider.*

4. *The provider's conversion from profit to non-profit was undertaken for the benefit of the community.* Likewise, the facility became accredited on August 31, 1973 by the Joint Commission on Accreditation of Hospitals.

Blue Cross of Virginia
Blue Shield of Virginia

EXHIBIT C

5. *As a result of the sale, the facility's costs have not increased unreasonably. A review of the average cost per Medicare patient*

*is reasonable as compared with similar facilities in the local geographical area.*

6. In addition, the Internal Revenue Service audited the facility and determined that the facility continued to maintain their tax-exempt status.

*During our preliminary negotiations with the provider concerning this appeal, it was our intention to support the provider's position. We did so in our first position paper* (Exhibit A). An additional review of this paper was made before it was forwarded to Blue Cross Association, and some modifications were made to adequately reflect the facts and the regulations. (See Exhibit B.) This position paper was forwarded to Blue Cross Association on January 22, 1973. Subsequently we were instructed by Blue Cross Association to further modify the paper to support the regulations. (See Exhibit C.) *We revised the final paper showing little, if any, support to the provider's case although we felt that the regulations were inequitable in this case.*

*We are in full agreement with Mr. Jacoby's letter dated August 3, 1973 requesting an exception be made in order to grant relief to this provider. The effects of the disallowance of depreciation and interest expense are far-reaching in scope as they will effect twelve (12) additional reports not including the ones the provider appealed.*

*We respectfully request that you reconsider Intermediary Letter No. 72–10's effect on the related organization principle as applied to the facts in this case and grant whatever relief possible to the provider. This is essential to prevent inequities resulting from the Medicare program not reimbursing the facility for their reasonable costs for Medicare beneficiaries and passing on any resulting losses to private pay patients.*

Please let me know if you have additional questions. We look forward to receiving a favorable decision in this case from the Bureau of Health Insurance.

Sincerely,

/s/ Conway H. Spiers

Conway H. Spiers
Controller

CHS/jm

Enclosures

cc: Mr. Bobby Childers, BHI
Mr. Ripley P. Owen, South Boston General Hospital