**PASADENA HOSPITAL ASSOCIATION, LTD.**

v.

**The UNITED STATES.**

No. 317–77.

United States Court of Claims.

March 19, 1980.

Robert A. Klein, Washington, D. C., attorney of record, for plaintiff. Weissburg & Aronson, Inc., Washington, D. C., of counsel.

Lynn J. Bush, Alexandria, Va., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D.C., for defendant. Leila H. Carp, Dept. of H.E.W., Washington, D. C., of counsel.

Before KASHIWA, KUNZIG and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This is a Medicare suit involving a claim by a provider that it has not been fully reimbursed for its costs in providing services to Medicare patients. The case is be-fore us on cross-motions for summary judgment. There is no genuine dispute as to material issues of fact. We hold for defendant.

Plaintiff, a nonprofit corporation operating a hospital, entered into an agreement in July 1966 with defendant through the Secretary of Health, Education and Welfare (the Secretary) to provide hospital services to beneficiaries of the Medicare Act. 42 U.S.C. §§ 1395 *et seq.* Plaintiff nominated Blue Cross Association to be its fiscal intermediary for Medicare purposes. As fiscal intermediary, Blue Cross acts as defendant's agent, assumes responsibility for auditing plaintiff's cost reports in order to determine allowable costs under the Medicare program, and reimburses plaintiff for such services from funds provided directly to Blue Cross by the Secretary. See 42 U.S.C. § 1395u. Plaintiff receives interim payments for services provided to Medicare patients, which payments are thereafter adjusted upon the intermediary's audit of the annual cost reports. This case involves two instances where Blue Cross made such adjustments for what it claimed were large overpayments to plaintiff.

Plaintiff appealed both adjustments to the intermediary itself through the Blue Cross Association Provider Appeal Procedures. The Blue Cross hearing officer denied both of plaintiff's claims. Plaintiff has exhausted its administrative remedies, *see Ulman v. United States,* 214 Ct.Cl. 308, 558 F.2d 1 (1977), and now seeks review of the administrative decision here.

Before turning to the merits, it is proper to examine our jurisdiction in this case and the proper scope of review. We have jurisdiction based on our general jurisdictional statute, 28 U.S.C. § 1491, for these money claims based on the Medicare statutes and plaintiff's contract with defendant. *Overlook Nursing Home, Inc. v. United States,* 214 Ct.Cl. 60, 556 F.2d 500 (1977); *Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 57 L.Ed.2d 361 (1977); *Goldstein v. United States,* 201

Ct.Cl. 888, *cert. denied,* 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973). However, our scope of review is quite limited. We can only review the administrative decision to see if it is arbitrary, capricious, unsupported by substantial evidence, or contains errors of law. We do not make a de novo review of the facts of these disputes. *Overlook Nursing Home, Inc. v. United States,* 214 Ct.Cl. at 65, 556 F.2d at 502.

## I

■ The first issue on the merits involves plaintiff's claim that disallowance of reimbursement for certain items was improper because the disallowance was not timely made. The disallowance was made by Blue Cross after reopening an audit of plaintiff's cost reports. The parties agree that Medicare regulations require that if the fiscal intermediary wishes to reopen an audit of a provider's cost reports after a final determination has been made, it must do so within 3 years after the final determination. The applicable regulation was 20 C.F.R. § 405.-499g (1973), 37 Fed.Reg. 10,725 (1972) (now replaced by 42 C.F.R. § 405.1885 (1979)). The relevant portions read:

(a) *Reopening a determination.* A determination on the amount of program reimbursement contained in a notice of program reimbursement may be reopened by the intermediary, either on its own motion or at the request of the provider, at any time within 3 years of the date of such notice to correct the amount of program reimbursement due the provider or due the health insurance program. No such determination may be reopened after such 3-year period except as provided in paragraph (d) of this section.

* * * * * *

(e) * * * The provision of this section shall also be applicable to any cost reporting period ending before December 31, 1971, and for any such period the 3-year period referred to in this section shall commence on the date of the intermediary's final determination on the cost report filed for such cost reporting period.

Plaintiff timely filed cost reports for its fiscal years ending October 1966 and October 1967. The reports were reviewed by the intermediary and on January 26, 1971, there was an "exit conference" attended by representatives of plaintiff and Blue Cross, at which plaintiff was notified that it had been overpaid and owed Blue Cross $22,285. Plaintiff was also notified of this deficiency by letter from Blue Cross on June 7, 1972, 17 months later. On June 26, 1974, Blue Cross reopened the audit of the 1966 and 1967 years and demanded $169,500. This was more than 3 years after the exit conference, but less than 3 years after the letter notice. The parties dispute whether the exit conference or the letter was the "final determination" and therefore whether the reopening was timely.

A related issue arose in *Overlook Nursing Home, Inc. v. United States, supra.* There the representatives of the provider and the fiscal intermediary met to discuss discrepancies in their accounts. The meeting resulted in an agreement wherein the intermediary promised to reimburse the provider for $125,000 worth of costs. Subsequently, after a post-audit review, the intermediary refused to pay more than $4,000. The provider argued that the earlier agreement was binding on both the intermediary and the Government. The court held that the intermediary's representatives at the meeting did not have real authority, as opposed to apparent authority, to bind the intermediary or the Government. The court characterized the agreement as merely an assurance by auditors that they would recommend their report to the intermediary. 214 Ct.Cl. at 69, 556 F.2d at 504. Since the representatives were without real authority, they could not bind the Government. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Molony & Rubien Constr. Co. v. United States,* 214 Ct.Cl. 809, 810 (1977); *Dunphy v. United States,* 208 Ct.Cl. 986, 989 (1975); *Brown v. United States,* 207 Ct.Cl. 768, 782, 524 F.2d 693, 701 (1975).

Plaintiff attempts to distinguish *Overlook* on the grounds that in *Overlook* only sub-

contract auditors were involved whereas in the instant case Blue Cross's "senior reimbursement auditor" also attended the conference. Actually the *Overlook* opinion reveals that the intermediary's "field representative" as well as its auditors attended the meeting. 214 Ct.Cl. at 63, 566 F.2d at 501. Moreover, the fact that a "senior reimbursement auditor" attended the exit conference cannot serve to distinguish *Overlook* unless plaintiff can also show that the "senior reimbursement auditor" had real authority to bind his principal. On plaintiff's administrative appeal, the Blue Cross hearing officer held that the Blue Cross representatives at the exit conference had no real authority to bind Blue Cross to audit findings, citing testimony about Blue Cross internal procedures to that effect. In its brief, plaintiff attacks this finding, pointing to a Blue Cross internal memo summarizing the exit conference which says that plaintiff was told that no change would be made in the audit report and that the appeal procedures were available to it. This is rather indirect evidence of real authority. It is not enough to show that the administrative decision was unsupported by substantial evidence or was arbitrary and capricious. Therefore that decision must stand on this issue. *Overlook Nursing Home, Inc. v. United States, supra,* 214 Ct.Cl. at 65, 556 F.2d at 502.

At oral argument, plaintiff's counsel admitted that the Blue Cross representatives who attended the exit conference could not bind the Government, but argued that they could start the 3-year period running for reopening audits. This argument goes essentially to the interpretation of the words "final determination" in the regulation. 20 C.F.R. § 405.499g(e) (1973), 37 Fed.Reg. 10,-725 (1972), quoted above. The parties' briefs do not address this issue directly, and *Overlook* is not in point. We are left to conclude what we can from the words "final determination." We hold that for a determination to be final it must be made by someone with authority to bind the intermediary and the Government to such determination absent a proper reopening or fraud or similar fault. *See* 42 C.F.R.

§ 405.1885(d)–(e) (1979). Since we have held above that no one had such authority at the exit conference, it follows that the exit conference did not constitute a final determination.

Plaintiff next invites us to modify the rule of *Federal Crop Ins. Corp. v. Merrill, supra,* citing *United States v. Lazy FC Ranch,* 481 F.2d 985 (9th Cir. 1973), which was a case for estoppel. We do not think the facts of the two cases are analogous.

■ Plaintiff's last argument on the timeliness question is that the long delay in issuing the letter notice, 17 months, amounts to a waiver of the right to reopen the cost reports, citing *Roberts v. United States,* 174 Ct.Cl. 940, 357 F.2d 938 (1966). *Roberts* is distinguishable from the present case in that (1) the Government's delay in presenting its claim prevented the plaintiff contractor from appealing any dispute on the matter to the head of the department, and (2) the dispute involved a situation where it was imperative to examine the evidence involved while a claim was still fresh. In the present case, plaintiff has had an opportunity for an administrative decision on its claims. Further, plaintiff makes no claim that because of the lapse of time it has been prejudiced by the loss of evidence to support its claims.

Plaintiff does not claim that any statute or regulation puts a time limit on how long the intermediary has to issue a final determination. Plaintiff only claims that 17 months is too long. However, even if we were inclined to estop the Government by implying a waiver in this type of situation, we would not do so on the particular facts of this case. There will always be some delay after an exit conference for review of the auditors' report before a final determination is issued. The question is whether 17 months is impermissibly long. We cannot say that 17 months on its face is a delay so great as to amount to a waiver. Thus, the burden rests on plaintiff to show why 17 months is unreasonable. Plaintiff points to no evidence in the record to this effect and offers us only its bare assertion that 17

months is too long. That is not enough. Plaintiff has failed to meet its burden and we hold against it.

Plaintiff's first claim fails.

## II

■ The second claim in this case deals with the disallowance of plaintiff's rental expense as reimbursable cost. Plaintiff leases its land and buildings from a trust which the parties have stipulated to be a "related organization" within the meaning of 42 C.F.R. § 405.427 (1979). The parties have also stipulated that the rent plaintiff pays the trust is reasonable. The rent derives from a lease executed in 1942, 24 years before the Medicare program was in existence. Blue Cross only reimbursed plaintiff for the amount of the trust's cost of ownership of the land and buildings, rather than the higher cost of plaintiff's rental expense. This was done pursuant to 42 C.F.R. § 405.427 (1979), which reads in part:

> (a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. * * *
>
> * * * * * *
>
> (c)(2) * * * An example would be a corporation building a hospital or a nursing home and then leasing it to *another* corporation controlled by the owner. Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization. * * *

Plaintiff claims that it should be fully reimbursed for its rental expense and this regulation should not be applied to it. Plaintiff does not attack the regulation per se.[1] Nor does it argue that its rental expense is not covered by the terms of the regulation. Plaintiff only objects to the application of the regulation to its rental expense in this instance.

Plaintiff's main contention is that application of the regulation to plaintiff's rent conflicts with the purpose of the regulation and the statute authorizing the regulation. The main statute authorizing this regulation is 42 U.S.C. § 1395x(v)(1)(A), which says that the "reasonable cost" of any Medicare services which are to be reimbursed will be defined by regulations promulgated by the Secretary. Plaintiff concludes from this that the regulation's purpose is to define what costs are "reasonable." It insists that the regulation is designed to avoid the passing of artificially inflated Medicare costs to the Government because of bad faith transactions between related parties which result in unreasonable charges to the Medicare provider. Thus, plaintiff argues that since its lease derives from a good faith transaction which occurred many years before the Medicare program, and provides for an admittedly reasonable charge to the provider, the purpose of the regulation and the statute are violated when the regulation is applied to plaintiff's rental expense in this case. Plaintiff claims that, furthermore, any conflict with the statute is impermissible, and therefore the Secretary is required to scrutinize every transaction before deciding whether or not to apply the related organization regulations. That is, the Secretary cannot uniformly enforce this regulation on the ground that case-by-case determinations would be too costly, for that would result in the failure to reimburse reasonable costs in individual cases.

We are not in complete agreement with this argument. We hold that another purpose of the regulation is to define not only what is "reasonable" under the statute, but also what is a "cost." That is, the Secretary has chosen to define the cost for which reimbursement will be permitted in certain transactions between affiliated organizations as the cost to the related supplying

1. The regulation has been upheld. *Fairfax Hosp. Ass'n, Inc. v. Califano,* 585 F.2d 602 (4th Cir. 1978); *Chelsea Community Hosp. v. Michigan Blue Cross Ass'n,* 436 F.Supp. 1050 (E.D. Mich.1977); *Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co.,* 311 F.Supp. 405 (E.D.Wis.1970).

organization rather than the cost to the Medicare provider. In this way the regulation avoids giving the related organizations a "double" or "intra-company" profit and furthers the statutory purpose of minimizing Medicare costs. *Lockwood Hosp., Inc. v. Califano*, Civ. No. 76–H–240 (S.D.Tex. 1978), *appeal pending*, No. 78–1975 (5th Cir.); *Chelsea Community Hosp. v. Michigan Blue Cross Ass'n, supra* n. 1, 436 F.Supp. at 1063; *Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co., supra* n. 1, 311 F.Supp. at 410.

When the regulation is taken as defining "cost," bona fides and the reasonableness of charges to the provider are irrelevant. Application of the regulation to plaintiff would be in keeping with, not in conflict with, this purpose. On this same basis, plaintiff's argument for case-by-case scrutiny must fall. If the Secretary were to be required to scrutinize every transaction, it would only make sense if the only purpose of the regulation was to avoid unreasonable charges to the provider. The Secretary would be analyzing whether each cost was reasonable. But once it is accepted that another purpose of the rule is to define "cost," the need for scrutiny vanishes once it is established that a provider and its supplier are related.

We find support for our position not only in the cases cited but in the regulation itself which states, "Where the provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owner(s) of the provider, in effect *the items are obtained from itself.* \* \* \* Therefore, *reimbursable cost should include the costs for these items at the cost to the supplying organization.*" 42 C.F.R. § 405.427(c)(2) (1979). (Emphasis supplied.) This is consistent with our interpretation that the regulation is meant to define "cost." We do not find comparable language in the regulation that indicates that the regulation is intended to define "reasonableness." This may be compared to the regulation involved in the court's decision this same day in *Trustees of Indiana University v. United States*, No.

71–78, 618 F.2d 736 (Ct.Cl.1980). That regulation does contain a statement that one of its purposes is to assure reasonable costs. 42 C.F.R. § 405.419(c)(1979).

Plaintiff attempts to rebut our conclusion by pointing to an exception provided by the regulation, 42 C.F.R. § 405.427(d)(1979), which provides as follows:

(d) *Exception.* An exception is provided to this general principle if the provider demonstrates by convincing evidence to the satisfaction of the fiscal intermediary (or, where the provider has not nominated a fiscal intermediary, the Health Care Financing Administration), that the supplying organization is a bona fide separate organization; that a substantial part of its business activity of the type carried on with the provider is transacted with others than the provider and organizations related to the supplier by common ownership or control and there is an open, competitive market for the type of services, facilities, or supplies furnished by the organization; that the services, facilities, or supplies are those which commonly are obtained by institutions such as the provider from other organizations and are not a basic element of patient care ordinarily furnished directly to patients by such institutions; and that the charge to the provider is in line with the charge for such services, facilities, or supplies in the open market and no more than the charge made under comparable circumstances to others by the organization for such services, facilities, or supplies. In such cases, the charge by the supplier to the provider for such services, facilities, or supplies shall be allowable as cost.

Plaintiff does not claim that it falls within the exception. It simply argues that the logic behind the exception is such that it indicates that the regulation is only aimed at preventing reimbursement of unreasonable costs. That is, plaintiff argues that the exception applies whenever there are external market constraints which assure that a related supplier will make only reasonable charges to the Medicare provider. Thus, it concludes, the regulation is only

directed at "reasonableness." However, as we read the exception, one of the requirements is that the supplier be a "bona fide separate organization" in addition to the existence of external constraints. Thus, the exception applies where the purpose of the regulation, as we see it, to treat related organizations as a single entity for the purpose of defining "cost," does not properly apply, although admittedly it looks to an assurance of reasonable costs as well.

Plaintiff would have us follow *South Boston Gen. Hosp. v Blue Cross of Virginia*, 409 F.Supp. 1380 (W.D.Va.1976). Plaintiff claims that *South Boston* holds that the purpose of the regulation is to prevent abuse of the Medicare program through the establishment of contrived relationships which unreasonably inflate Medicare costs. The opinion in *South Boston* does not consider the argument that the regulation also defines "cost." To that extent we find it distinguishable. To the extent that it holds that preventing unreasonable costs is the *only* purpose of the regulation, we decline to follow it. Plaintiff also claims that *South Boston* holds that the Secretary must scrutinize every transaction before deciding whether or not to apply the related organization regulations. But given our reasoning, we need not reach the issue of whether the Secretary must scrutinize every transaction.

Plaintiff also relies heavily on *Rio Hondo Memorial Hosp. v. Weinberger*, No. CV 74–3376–IH (C.D.Cal.1975). However, we were informed at oral argument that *Rio Hondo* was vacated on appeal and transferred to this court. Being vacated, it is without precedential value. *Holy Cross Hosp. v. United States*, Ct.Cl. No. 351–77 (order, Feb. 16, 1979). *Faith Hosp. Ass'n v. United States*, 218 Ct.Cl. ——, ——, 585 F.2d 474, 478 (1978).

In *Trustees of Indiana University v. United States*, No. 71–78, 618 F.2d 736 (Ct.Cl.1980), decided today, we hold that in the particular circumstances of that case, a regulation barring reimbursement of interest payments between related organizations does not apply to payments by a nonprofit hospital affiliated with Indiana University. That decision is not inconsistent with the decision in the present case. *Indiana University* involves a different regulation, which revealed a self-contradictory policy on its face and contained a statement of its purpose which was inapplicable to the provider's situation. The decision is explicitly limited to the particular case and turns in large measure upon the unusual factual situation there present.

Plaintiff next argues that application of the regulation to plaintiff's rental expense is impermissible because it conflicts with other Medicare statutes and regulations. Plaintiff first points to a conflict with statutes and regulations that require the Secretary to reimburse providers for their reasonable costs and all necessary and proper expenses. 42 U.S.C. § 1395f; 42 C.F.R. § 405.451 (1979). The previous dicussion adequately answers this. 42 C.F.R. § 405.-427 is a proper exercise of the Secretary's power to define "cost" and "expense."

Plaintiff next claims there is a conflict with regulations 42 C.F.R. §§ 405.415 and 405.419, which plaintiff claims make exceptions from the related organization rules for transactions between related parties which predate the Medicare program. However, the fact that the Secretary may have determined that in certain instances other considerations warrant overriding the related organization rules does not require them to be eliminated in every instance. Just such other considerations seem to have been operative in the case of 42 C.F.R. § 405.-419(c)(2), involving interest on loans from related lenders. *See Lockwood Hosp., Inc. v. Califano*, Civ. No. 76–H–240 (S.D.Tex. 1978), *appeal pending*, No. 78–1975 (5th Cir.). 42 C.F.R. § 405.415 involves depreciation. Defendant does not offer us a competing policy in that case. However, the regulation does not, on its face at least, provide the exception from the related organization rules that plaintiff claims. We note that there is a split of authority as to whether there is such an exception. *Compare Hillside Community Hosp. v. Mathews*, 423 F.Supp. 1168 (N.D.Cal.1976), and *South*

*Boston Gen. Hosp. v. Blue Cross of Virginia,* 409 F.Supp. 1380 (W.D.Va.1976). Since we are not dealing with depreciation here, we are loathe to decide that issue. Nevertheless, even if plaintiff is correct, we think the Secretary's actions would be permissible. That is, it would not be an abuse of discretion to draw a distinction between transactions which were completed before Medicare and involve a single incident, such as a sale contemplated by 42 C.F.R. § 405.-415, and transactions involving an ongoing relationship, such as the lease involved here. *See South Boston Gen. Hosp. v. Blue Cross of Virginia, supra,* 409 F.Supp. at 1383 n. 2.

Plaintiff also argues that application of section 405.427 to its rental expense violates 42 U.S.C. § 1395x(v)(1)(A), which provides that the necessary costs of treating Medicare patients may not be shifted to non-Medicare patients. Of course, if plaintiff's argument is to prevail, no cost could ever be disallowed for reimbursement purposes because to do so would tend to shift the cost to non-Medicare patients. As we have held, section 405.427 defines "cost" as the cost to the related supplier. As such, the cost is not shifted here.

■ Finally, plaintiff argues that the application of the regulation to its rental expense is impermissibly retroactive. First, we note that retroactivity is not per se unlawful. *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938). We have approved retroactive effects in other regulations in the Medicare field. *Summit Nursing Home, Inc. v United States,* 215 Ct.Cl. 581, 572 F.2d 737 (1978). Furthermore, there is a built-in retroactive effect even in the Medicare statutes which provide for retroactive adjustments if methods of estimating costs turn out to overcompensate or undercompensate a provider. 42 U.S.C. § 1395x(v)(1)(A). *See Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 57 L.Ed.2d 361 (1977). The case plaintiff cites to us, *Saint Francis Memorial Hosp. v. Weinberger,* 413 F.Supp. 323 (N.D. Cal.1976), *appeal pending,* involves the application of a change in policy to earlier events which is not what is involved in the instant case.

■ We turn now to the particulars of this case. Plaintiff argues that its lease was executed long before the Medicare Act. The Secretary now refuses to reimburse plaintiff for its rental expense. Therefore, plaintiff argues, the regulation divests it of a previously held right, and is unlawfully retroactive.

We do not find this logic compelling. The governing statutes provide for reimbursement of "reasonable costs" as they are defined by the Secretary. 42 U.S.C. §§ 1395f, 1395x(v)(1)(A). The Secretary has issued regulations which disallow reimbursement of plaintiff's rental expense and we have held that the regulations further statutory objectives. Plaintiff never had a right to be reimbursed for its rent so we fail to see how it could be "divested" of such a right. The trust still has a right to receive rent payments from plaintiff. That is undisturbed by the regulation. Thus, we hold that there is no retroactive effect here at all. *Lockwood Hosp., Inc. v. Califano,* Civ. No. 76–H–240 (S.D.Tex.1978), *appeal pending,* No. 78–1975 (5th Cir.).

We would go further and point out that plaintiff cannot even claim that it had legitimate expectations that were defeated. 42 C.F.R. § 405.427 was published as a proposed regulation in June 1966. 31 Fed.Reg. 7871 (1966). Plaintiff entered the Medicare program in July 1966. The regulation became effective in November 1966. 31 Fed. Reg. 14,815 (1966). For the period after November 1966, plaintiff could arrange its affairs to cope with the effect of the regulation. Before November, it might seem that plaintiff would not have had the option of so arranging its affairs. Plaintiff does not argue this before us, however. Presumably, this is because plaintiff knew or should have known of the proposed regulation in June. Although it was only a proposed regulation at that time, plaintiff was certainly put on notice of the possibility that its rental expense would not be reimbursed if it entered the Medicare program. It could not have known that for certain,

but it certainly could not have reasonably expected that it would be reimbursed.

Plaintiff's second claim also fails.

Defendant's motion for summary judgment is granted. Plaintiff's motion is denied. The petition is dismissed.

KUNZIG, Judge, concurring:

I concur with the opinion for defendant in this case and wish to emphasize its consistency with the court's decision issued today in *Trustees of Indiana University v. United States,* 618 F.2d 736 (Ct.Cl.1980) wherein I join the decision for plaintiff.

First, the instant case involves a different regulation than the one in *Indiana University.* The thrust of the regulation we confront in *Pasadena,* 42 C.F.R. § 405.427 "Cost to related organization," defines includable *costs* for the purposes of reimbursement. In contrast, the regulation in *Indiana University,* 42 C.F.R. § 405.419(c) was designed to assure that reimbursable interest expenses are *reasonable.* "The intent of this provision is to assure that loans are legitimate and needed, and that the interest rate is reasonable." 42 C.F.R. § 405.419(c)(1). The refusal of defendant in *Indiana University* to reimburse plaintiff its interest expenses is directly contrary to this explicit purpose. The refusal in this case to reimburse sums which are excluded from the cost standard, *see* 42 C.F.R. § 405.527(c)(2), is quite different.

Second, the decision in *Indiana University* is concerned with avoiding questions of the regulation's validity on constitutional grounds. The regulation in *Indiana University* draws an exception for interest payments by a provider operated by members of a religious order made to that order. Denying reimbursement to nonprofit Indiana University Hospitals yet permitting interest payment reimbursement to an affiliated religious order could well raise a first amendment question. The decision in *Indiana University* avoids that problem. This factor is entirely absent from the court's consideration of *Pasadena.*

These two aspects of *Indiana University,* the different nature of the regulation involved, the presence of the constitutional question, plus the unique factual circumstances enumerated therein, serve clearly to distinguish it from the approach we outline in *Pasadena.*