603 A.2d 1344
**LIBERTY NURSING CENTER, INC.**
**t/a Granada Nursing Home**

v.

**DEPARTMENT OF HEALTH AND MENTAL HYGIENE.**

No. 878, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 7, 1992.

Stephen J. Sfekas (Weinberg and Green, on the brief), Baltimore, for appellant.

Lawrence J. Ageloff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Maureen M. Dove, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before BISHOP, ALPERT and HARRELL, JJ.

BISHOP, Judge.

Liberty Nursing Center, Inc., t/a Granada Nursing Home ("Liberty") appeals from an order of the Circuit Court for Baltimore City (Mitchell, J.) affirming the decision of the Nursing Home Appeals Board ("NHAB"). Md.Health–Gen. Code Ann. § 2–207 (1990) and Md.St.Gov't Code Ann. § 10–215 (1984). The NHAB denied reimbursement to Liberty for the cost of interest associated with the purchase of the property and facilities of the Granada Nursing Center from the estate of Margaret Wessels. Throughout this opinion we use "Liberty" to refer to the corporate entity and "Granada Nursing Center" or the "facilities" to refer to the nursing home building and the land on which it sits.

## ISSUE PRESENTED

Liberty presents the following issue:

Did the NHAB err in disallowing Liberty Medicaid reimbursement for interest expenses based on the related organization principle?

## FACTS AND PROCEEDINGS BELOW

Liberty and appellee, the Department of Health and Mental Hygiene (the "Department"), have prepared a joint statement of facts for purposes of this appeal. *See* Md. Rule 8–501(g).

Liberty is the operator of a 112 bed nursing facility located in Baltimore City and is licensed to provide comprehensive care services. Ownership of Liberty currently is divided between two brothers, Michael DeFontes ("DeFontes"), who owns 55%, and his brother Robert, who owns 45%. Liberty participates in the Maryland Medical Assist-

ance Program (the "Program" or "Medicaid"), a state and federally funded program that pays for, among other services, comprehensive care services for indigent and medically indigent patients. Almost 100% of the patients at the Granada Nursing Center receive medical assistance.

Margaret Wessels ("Wessels") owned Liberty until her death on July 23, 1983. She also owned individually the land and the building utilized by Granada Nursing Center. Liberty does not hold title to the nursing center's building and grounds, instead it leases them. Wessels leased the building and grounds to Liberty until her death; thereafter, Liberty continued to lease the building from the Wessels estate. Included among the assets of the Wessels estate were Liberty, the land and the building utilized by Granada Nursing Center, a personal residence, a promissory note, and miscellaneous property. During probate, it was determined that the estate owed $373,012.30 in federal estate taxes and $37,522.07 in Maryland estate taxes. Counsel for the estate applied to the Internal Revenue Service ("IRS") for a postponement and deferral of payment of the federal estate tax; however, the IRS granted only a one year deferral. DeFontes, Wessels's grandson, served as personal representative of the estate. Counsel advised DeFontes that it would be necessary to sell the nursing home property to pay the estate taxes and close the estate. Rather than sell the nursing home property to someone else, DeFontes purchased, in his individual capacity, the land and the building from the estate for $1,200,000. The State had appraised the facilities at approximately $2,000,000. DeFontes financed the purchase by means of a $1,200,000 loan from First American Bank at 11% interest and secured the loan by a mortgage on the facility. After the purchase by DeFontes, the estate taxes were paid, and the Wessels estate was closed with the approval of the Orphans Court of Baltimore City. During the entire fiscal year ending June 30, 1988, the year at issue here, Liberty leased the facilities from DeFontes.

Medicaid reimbursement to a provider, *i.e.* Liberty, is based on certain costs incurred to operate a nursing facility. When a lease is executed between related parties, the actual costs of ownership of the property are reimbursable, in lieu of reimbursement for the rent paid to the related organization. Because DeFontes is a 55% stockholder in Liberty, the lease between DeFontes and Liberty is between related organizations, and Liberty may be reimbursed the actual cost of ownership of the property, rather than the cost of rent paid to DeFontes.

At the end of each fiscal year, Liberty reports its costs to the Program. In the fiscal year ending June 30, 1988, $135,808 was paid in interest on the mortgage loan to First American Bank, and Liberty reported this interest on its cost report. Clifton, Gunderson & Co. ("Clifton, Gunderson") is an accounting firm under contract with the State to perform audits of nursing home cost reports. In its audit of Liberty, Clifton, Gunderson disallowed the $135,808 in interest expense on the First American mortgage on the grounds that DeFontes and the Wessels estate were "related organizations" under the Medicare and Medicaid regulations. Clifton, Gunderson issued a proposed cost settlement incorporating this disallowance, and Liberty appealed the cost settlement to NHAB. In a Decision filed February 28, 1991, NHAB affirmed the position of Clifton, Gunderson by a 2 to 1 vote. NHAB wrote:

The Board reviewed the written and oral arguments of both parties, and the majority of the Board agreed with the State that as the Provider purchased the land and building [ ] utilized by the Provider from the late grandmother's estate, this transaction is between related parties and does not constitute a bonafide [sic] purchase. In other words[,] there is no effective change in the ownership/operation which should be recognized for reimbursement purposes, therefore the loan obtained by Mr. DeFontes is a refinancing.

Further, COMAR Regulations state[ ] that "Refinancing not normally allowed will be permitted as the basis

for reimbursement calculations if the Department determines that lower cost to the State would result[.]" [T]he financing in question cannot result in lower cost in view of the fact that a $1,200,000 mortgage at 11% exists where prior to July 2, 1987, it did not exist[. T]herefore this financing cannot be recognized for reimbursement purposes.

A dissent was filed by one member of NHAB. Liberty appealed the decision of NHAB to the Circuit Court for Baltimore City. The circuit court affirmed the decision of NHAB in an Order dated March 12, 1991 stating that the "decision of the NHAB was both supported by competent, material, and substantial evidence and correct in its interpretation of the law." Liberty appeals from this Order.

## DISCUSSION

### A. *Standard of Review*

The standard for our review of NHAB's decision, like that of the circuit court, is set forth in the Maryland Administrative Procedure Act. Md.State Gov't Code Ann. §§ 10–101 to 10–405 (1984 & Supp.1991). Section 10–215(g) provides:

(g) In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the decision of the agency; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

As we stated in *Dep't of Health and Mental Hygiene v. Reeders Memorial Home, Inc.*, 86 Md.App. 447, 452, 586 A.2d 1295 (1991):

> When determining whether an agency's factual finding violates Section 10–215, the appropriate standard of review is, of course, the substantial evidence test. However, when we consider whether the agency erred as a matter of law, for example, when there is a challenge to a regulatory interpretation, the substituted judgment standard is to be used.

We must pay special attention to NHAB's interpretation of the applicable regulations:

> Upon appellate review, courts bestow special favor on an agency's interpretation of its own regulation. Recognizing an agency's superior ability to understand its own rules and regulations, a "court should not substitute its own judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken". *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 513, 390 A.2d 1119 (1978). We have acknowledged the expertise of the NHAB as the independent body whose members are "knowledgeable in Medicare and Medicaid reimbursement principles" and whose sole function is to decide issues of reimbursement. *Fort Washington Care Center v. Department*, 80 Md.App. 205, 213, 560 A.2d 613 (1989).

*Id.* 86 Md.App. at 453, 586 A.2d 1295. Moreover, we can rely only upon the findings of NHAB and the rationale it offered for its decision.

> Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the

reasons stated by the agency. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–68, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207, 215–16 (1962); *Securities & Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626, 636–37 (1943)[.]

*United Steelworkers v. Bethlehem Steel Corp.*, 298 Md. 665, 679, 472 A.2d 62 (1984).

Applying this standard of review to the case *sub judice*, we conclude NHAB did not err as a matter of law in disallowing Liberty's interest expenses based on the related organization principle.

### B. *The Related Organization Principle*

■ The Department is authorized by statute to "adopt rules and regulations for the reimbursement of providers under the Program." Md.Health–Gen.Code Ann. § 15–105(a). Pursuant to this grant of authority, the Department has expressly chosen to adopt federal reimbursement principles:

> The final per diem rate ... is the sum of: (1) The provider's allowable per diem costs for covered services according to the principles established under Title XVIII of the Social Security Act, 42 U.S. § 1395 et seq., and contained in the Medicare Provider Reimbursement Manual, HCFA Publication 15–1, unless otherwise specified by this chapter[.]

Md.Regs.Code tit. 10, § 09.11.08B(1). *See also, id.* at § 09.-11.10B. Federal law requires States to reimburse Providers at "reasonable and adequate" rates. 42 U.S.C. § 1396a(a)(13) (1992). The "reasonable cost" of services is the cost actually incurred, and is determined in accordance with federal regulations "establishing the method or methods to be used, and the items to be included[.]" *Id.* at § 1395x(v)(1)(A) (1992). Federal regulations curtail reimbursement between "related organizations":

> Except as provided in paragraph (d) of this section, costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by

common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies.

42 C.F.R. § 413.17(a).

NHAB denied Liberty's claim for reimbursement of interest on DeFontes's loan based on this related organizations principle. NHAB explained in its Decision:

> [T]he Provider purchased the land and building, utilized by the Provider from the late grandmother's estate, this transaction is between related parties and does not constitute a bonafide [sic] purchase. In other words[,] there is no effective change in the ownership/operation which should be recognized for reimbursement purposes[.]

At this juncture we note that NHAB's decision implicitly equates the "Provider" (Liberty) with DeFontes. It states that the "Provider" purchased the land, when, in actuality, DeFontes purchased the land in his individual capacity and leased it to Liberty. Because DeFontes is the 55% shareholder of Liberty, however, he is, in effect, the "Provider", and there is no problem with NHAB referring to him as such. To avoid confusion, we will refer to "Liberty/DeFontes," rather than the "Provider."

Because Liberty/DeFontes and the estate were related, NHAB reasoned, there was no change in ownership of the facilities for reimbursement purposes. Because there was no change in ownership, NHAB reasoned, the loan obtained by DeFontes was a "refinancing." NHAB then explained that Maryland regulations permit reimbursement for refinancing only if "the Department determines that [a] lower cost to the State would result." *See* Md.Regs. tit. 10, § 09.11.10N. DeFontes's refinancing could not result in a lower cost to the State, NHAB reasoned, because his "$1,200,000 mortgage at 11% [now] exist[ed] where prior to July 2, 1987, [no mortgage existed.]"

NHAB's reasoning may be summarized as follows: 1) Liberty/DeFontes and the Wessels estate are "related orga-

nizations"; 2) Because Liberty/DeFontes and the estate are related organizations, no change in ownership or in capital structure between the estate and Liberty/DeFontes is recognized for purposes of reimbursement; 3) Because no change in ownership or capital structure is recognized, the loan obtained by DeFontes is a "refinancing"; 4) Refinancing is reimbursable only if it results in a lower cost to the State; 5) The DeFontes refinancing does not result in a lower cost to the State because DeFontes incurred mortgage debt when previously the estate had no mortgage debt; 6) Therefore, interest on the loan is not reimbursable.

As we will explain, NHAB's decision is proper for the reasons it provided.

### 1. The parties are related

NHAB concluded Liberty/DeFontes and the Wessels estate were "related organizations." NHAB's Decision recounted the State's argument: 1) Liberty is 55% owned by DeFontes; 2) prior to July 2, 1987 Liberty leased the facilities from the Wessels estate; 3) the late Mrs. Wessels was DeFontes's grandmother; and 4) DeFontes was the personal representative for, and an heir to, the Wessels estate. Given the relationship between DeFontes, the 55% owner of Liberty, and the Wessels estate, NHAB's decision that Liberty/DeFontes and the estate were related is supported by competent, material, and substantial evidence. DeFontes was the grandson of Wessels, the personal representative of the Wessels estate, and an heir of the estate. In determining whether entities are related, "the tests of common ownership and control are to be applied[.]" Provider Reimbursement Manual–Part I: 1004. When common ownership exists, an immediate family relationship, including the relationship of grandparent and grandchild, creates an irrebuttable presumption of relatedness through control or attribution of ownership. Common ownership exists when an individual possesses significant ownership or equity in the provider and the institution serving the provider. Provider Reimbursement Manual–Part I: 1002.2. In the

case *sub judice*, DeFontes possesses a significant interest in Liberty, 55%, and was an heir of the Wessels estate. Because DeFontes possessed a significant interest in both Liberty and the estate, the sale of the facilities was a sale between related organizations. Based on the facts involved in this case, we hold Liberty/DeFontes and the Wessels estate were related organizations for reimbursement purposes.

### 2. No change in ownership or capital structure

NHAB reasons that because Liberty/DeFontes and the estate are related organizations, no change in ownership or capital structure between the estate and Liberty/DeFontes is recognized for reimbursement purposes. As explained *supra,* Maryland utilizes federal principles to determine reimbursement. Although no single federal regulation expressly states that "changes in ownership or capital structure" are not recognized between related parties, this is a fair statement when the applicable regulations are considered in their entirety. We explain.

The principle of related organizations recurs throughout the federal regulations governing reimbursement. The principle is most clearly stated in 42 C.F.R. § 413.17: "[F]acilities ... furnished to the provider by organizations related to the provider by common ownership or control are ... [reimbursable] *at the cost to the related organization.*" (Emphasis added). Moreover, the regulations state that "[i]f the supplying organization is related to the provider within the meaning of § 413.17 ... a provider's capital-related costs include the capital-related costs *of the supplying organization.*" 42 C.F.R. § 413.130(g) (emphasis added). Furthermore, with regard to depreciation, the regulations provide: "[I]f the purchaser cannot demonstrate that the sale was bona fide ... the purchaser's cost basis may not exceed the seller's cost basis, less accumulated depreciation." 42 C.F.R. § 413.134(g). As explained in the Provider Reimbursement Manual, the sale of a facility between relat-

ed organizations is not considered "bona fide" for reimbursement purposes:

> Where a facility is purchased from an organization related to the purchaser by common ownership or control, ... the purchaser's basis for depreciation shall not exceed the seller's basis under the program[.]

Provider Reimbursement Manual–Part 1: 1011.4. We recognize the State does not reimburse investment through depreciation and return on equity as does Medicare, and therefore, 42 C.F.R. § 413.134(g) does not correlate expressly with Maryland's reimbursement system. The State reimburses through a device called Net Capital Value Rental ("NCVR"). For an explanation of the calculation of NCVR, see Md.Regs.Code tit. 10 § 09.11.10L. The general principle articulated in the depreciation regulation and the corresponding section of the Provider Reimbursement Manual, however, may be applied to Maryland's Medicaid reimbursement system.

█ NHAB has applied the related organizations principle by limiting the amount of reimbursable debt to the amount that existed in the hands of the related seller prior to the sale. We hold that NHAB's interpretation of the regulations we have cited is a permissible one. We will not substitute our judgment for that of NHAB, the expert in Medicare and Medicaid reimbursement principles. *Reeders*, 86 Md.App. at 453, 586 A.2d 1295.

Appellant relies on *South Boston General Hospital v. Blue Cross of Virginia*, 409 F.Supp. 1380 (W.D.Va.1976), to support its argument that the related organization principle applies only to continuing business dealings and not to one time sales, such as the sale of property involved here. This holding in *South Boston* has been discredited. *See e.g., Trull Nursing Home v. State Dep't of Human Servs.*, 461 A.2d 490, 497 (Me.1983); *Jackson Park Hospital Foundation v. United States*, 228 Ct.Cl. 448, 659 F.2d 132, 137, n. 12 (1981); *Hillside Park Hospital v. Mathews*, 423 F.Supp. 1168, 1175 (1976).

Appellant also argues it is entitled to reimbursement because 42 C.F.R. § 413.153 only disallows interest as a cost when the *lender* and the *borrower* are related, not when the *seller* and the *purchaser* are related. Because DeFontes borrowed the funds from an unrelated third party bank, appellant argues, reimbursement is not barred. We agree that § 413.153 disallows interest between related borrowers and sellers and that DeFontes is not related to the First American Bank. We do not, however, base our disallowance of the interest on § 413.153. As we explained *supra*, our conclusion that changes in ownership or capital structure are not recognized between related parties is supported by our reading of the regulations taken as a whole, not just upon examination of one regulation. Section 413.153 does not apply in this situation.

### 3. DeFontes' loan is a non-reimbursable refinancing

Because the transaction does not involve a change in ownership, the DeFontes loan is considered a refinancing for reimbursement purposes. The loan, in effect, converts capital accrued in the nursing home into debt. The debt was created by DeFontes where previously there was no debt. Because it results in a higher, not a lower, cost to the State, this new debt is not recognized for reimbursement purposes. Md.Regs.Code tit. 10, § 09.11.10N.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.